IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-057

Filing Date: December 2, 2009

Docket No. 31,279

LION'S GATE WATER,

       Plaintiff-Respondent,

v.

JOHN D'ANTONIO, JR., State Engineer
for the State of New Mexico,

       Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
J.C. Robinson, District Judge

DL Sanders, Chief Counsel
Jonathan E. Sperber, Special Assistant Attorney General
Office of the State Engineer
Santa Fe, NM

for Petitioner

Hubert & Hernandez, LLC
Lee E. Peters
Las Cruces, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

{1}    This case comes to us through a long and tortuous route, wending its way from the Office of the State Engineer to this Court over the course of more than six years. The present iteration of judicial review arose when the Sixth Judicial District Court entered an interim order on May 29, 2008, finding that Respondent Lion's Gate Water's notice publication "substantially complied" with the statutory requirement and ordering a trial de novo on "all

1

matters either presented or which might have been presented to [the State Engineer] as well as new evidence developed since the administrative hearing." The State Engineer appealed the interim order and the Court of Appeals denied his application for interlocutory appeal. The State Engineer then filed a petition for writ of certiorari to this Court. We granted certiorari on September 9, 2008, to review all issues raised in the petition. *Lion's Gate v. D'Antonio*, 2008-NMCERT-009, 145 N.M. 258, 196 P.3d 489.

**{2}** We hold that the district court is limited to a de novo review of the issue before the State Engineer, which was solely whether water is available for appropriation. We also hold that notice publication of an application for a permit to appropriate water in a form prescribed by the State Engineer is necessary only if water is found to be available, either through an initial determination by the State Engineer or following a ruling by the district court on appeal. The State Engineer may decline to order notice publication if he or she determines that water is unavailable because no third-party rights are implicated. Lion's Gate's publication of notice has no legal effect because (1) publication followed the State Engineer's determination that water was unavailable, making notice unnecessary; (2) Lion's Gate was not instructed by the State Engineer to publish notice, as required by statute; and (3) notice was not published in a form prescribed by the State Engineer, as required by statute. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I.      BACKGROUND

**{3}** A detailed recapitulation of the procedural history of this case and of the history of water appropriation from the Gila River is necessary to understand the current posture of this dispute. In February 2003, Lion's Gate submitted an application to the Water Rights Division of the Office of the State Engineer for a permit to appropriate new water from the Gila River in southwestern New Mexico. Applications for permits to appropriate water and appeals to district court are governed by Chapter 72 of the New Mexico statutes. The State Engineer interprets these enabling statutes to require him, if he determines that no unappropriated water is available, to summarily reject applications to appropriate water, *see* NMSA 1978, § 72-5-7 (1985), as not being "in the form required by the rules and regulations established by him." NMSA 1978, § 72-5-1 (1907, as amended through 1979). It is at this point that Lion's Gate's application ran afoul of the State Engineer's administrative process.

**{4}** As early as 1935, when *United States v. Gila Valley Irrigation District* (D. Ct. Ariz. 1935) was entered as the first decree adjudicating Gila River water rights, water in the Gila River has been in scarce supply. By 1960, it was recognized that the Gila was overappropriated as "the supply of water presently available and which seems likely to be available in the future is not sufficient to satisfy the needs and demands of existing projects." Special Master Report, Simon H. Rifkind, 325, 337, Dec. 5, 1960, *in Ariz. v. Cal.*, 376 U.S. 340 (1964). The Gila Decree, also known as Globe Equity No. 59, served as the foundation for the 1964 apportionment in *Arizona v. California* of New Mexico's share of the Colorado River and its tributaries. 376 U.S. at 348-49; Rifkind at 327-28. In *Arizona v. California*,

the United States Supreme Court, pursuant to the Gila Decree, apportioned New Mexico's share of the Colorado River, of which the Gila is a tributary. The *Arizona v. California* decree enjoins "[t]he State of New Mexico, its officers, attorneys, agents and employees" from "diverting or permitting the diversion of water from the Gila River," except as provided by the decree. *Ariz. v. Cal.*, 376 U.S. at 347-48. The decree limits Gila diversions in New Mexico to 136,620 acre feet of water during any period of ten consecutive years and to 15,895 acre feet during any single year. *Id.* at 348. It further prohibits diversion or permitting the diversion of water from the Gila "except for use on lands determined to have the right to the use of such water" by Globe Equity No. 59. *Id.* at 348-49.

**{5}** In *New Mexico ex rel. Reynolds v. Anderson*, Cause No. 16290 (D. Grant County, N.M. 1967) (final judgment and decree), the Sixth Judicial District Court subsequently adjudicated the use of New Mexico's apportioned share of the Gila River system water and, pursuant to the *Arizona v. California* decree, enjoined the State Engineer "from permitting *new* uses of water within the Gila River Stream System which would cause the total of uses therefrom to exceed the limitations decreed by the United States Supreme Court in *Arizona v. California*[.]" *Id.* at 5 (emphasis added). Under the *Arizona v. California* decree, the total number of irrigated acres allowed in the Gila River system in New Mexico is 7,057, but according to State Engineer records, the number of adjudicated and permitted irrigated acres in New Mexico is 7,177, meaning the irrigated acreage in New Mexico exceeds the *Arizona v. California* decree by approximately 120 acres. Similarly, the *Arizona v. California* decree also limits consumptive use of water in the New Mexico Gila River system to 136,620 acre feet during any period of ten consecutive years, while State Engineer records indicate that the actual adjudicated and permitted consumptive use is 149,610 acre feet during any period of ten consecutive years, resulting in an actual consumptive use in New Mexico of 12,990 acre feet more than the decree permits. While it appears that some unappropriated water was available for water users in New Mexico following the *Arizona v. California* and *Anderson* decrees, all of that water was already spoken for by applications for permits to appropriate that had been pending before the resolution of those lawsuits.

**{6}** After apportionment of the Gila River had been established through the *Arizona v. California* decree, in 1968 Congress created an opportunity for the use of additional Gila River water in New Mexico in excess of the amounts decreed, but only by contracting for that water with the Secretary of the Interior.[1] Colorado River Basin Project Act § 304(f), 43 U.S.C. § 1524(f)(1) (2004) (providing that "the Secretary [of the Interior] shall offer to contract with water users in the State of New Mexico . . . for water from the Gila River" for the consumptive use of up to an annual average of 18,000 acre feet for any given ten-year

---

[1]Lion's Gate was well aware of the federal law requiring a contract with the Secretary of the Department of the Interior to make use of the additional 18,000 acre feet of Gila River water, as evidenced by its lawsuit seeking declaratory relief against then-Department of the Interior Secretary Gale Norton and its four "written acceptance[s]" of the Department of the Interior's mandatory offer to contract.

3

period).[2,3]

**{7}** Accordingly, the Water Rights Division of the State Engineer's Office determined that no unappropriated water was available for Lion's Gate, and summarily rejected its initial application and each of its subsequent seven amended applications pursuant to Section 72-5-7. In this regard, none of Lion's Gate's applications fared any better than dozens of previous permit applications dating back to 1969 seeking to appropriate water from the Gila.

**{8}** Despite the rejection of its application and amended applications, Lion's Gate initiated notice publication of its application for a permit to appropriate water on March 14, 2003. The State Engineer apparently contacted the newspaper carrying the notice to request that it terminate publication, presumably for the reason that Lion's Gate's notice did not strictly comply with NMSA 1978, Section 72-5-4 (2001), which requires the State Engineer to prescribe the notice's form to authorize its publication. After threatening litigation over the termination of its notice publication, Lion's Gate demanded an administrative hearing to review the State Engineer's summary rejection of its amended application, acknowledging that pursuant to NMSA 1978, Section 72-2-16 (1973), a hearing is required before the State Engineer's decision can be appealed to district court.

**{9}** Notwithstanding this acknowledgment, Lion's Gate filed an appeal of the rejection of its initial application and its first and second amended applications to the Sixth Judicial District Court on the following day. In the following weeks, Lion's Gate filed with the district court three additional appeals of the State Engineer's summary rejections of its third, fourth, fifth, sixth, and seventh amended applications. Lion's Gate argued that further administrative review by way of a hearing under Section 72-2-16 was futile, given the State Engineer's firm position on the matter. Lion's Gate also argued that the right to a de novo hearing under New Mexico Constitution Article XVI, Section 5[4] and NMSA 1978, Section

---

[2]The Act was later amended by the Arizona Water Settlements Act §§ 202, 212, 43 U.S.C. § 1501 (2006), reducing the additional amount of Gila River water available for contract to 14,000 acre feet and conditioning the right to contract on the Secretary of the Interior's execution of the New Mexico Consumptive Use and Forbearance Agreement, which in turn must be "executed by all signatory parties and approved by the State of New Mexico." *Id.*

[3]The Act contains no further instructions, guidance, or language explaining how one might go about contracting with the Secretary or how the Secretary should go about deciding who should get the water.

[4]Article XVI, Section 5 provides: "In any appeal to the district court from the decision, act or refusal to act of any state executive officer or body in matters relating to water rights, the proceeding upon appeal shall be de novo as cases originally docketed in the district court unless otherwise provided by law."

4

72-7-1(E) (1971),[5] further obviated the need for additional administrative action because the district court, through the provision for de novo review, has jurisdiction over the matter. In doing so, Lion's Gate apparently changed its position within twenty-four hours, contradicting its letter to the State Engineer demanding a hearing so its application could be appealed to the district court, and argued to the district court that its appeals were proper, even without a hearing, because Section 72-5-7 grants the State Engineer authority to summarily reject an application, thereby creating opportunity for a "short-circuit" of the usual administrative process otherwise provided for by New Mexico's water code.[6] Following the State Engineer's rejection of the last amended application in April 2003, Lion's Gate again initiated publication of notice. This time publication was not curtailed by the State Engineer and notice ran for the statutory period, once a week for three consecutive weeks, though its form had not been prescribed by the State Engineer and Lion's Gate's application and the last of its amended applications had already been rejected.

**{10}** In the interim, the State Engineer continued to prepare for an administrative hearing as requested by Lion's Gate, notwithstanding Lion's Gate's appeals to the Sixth Judicial District Court. Accordingly, the State Engineer argued before the district court, *inter alia*, that administrative remedies had not been exhausted as required by Section 72-2-16 and that Lion's Gate's claim should be dismissed. The Sixth Judicial District Court issued a final judgment dismissing Lion's Gate's appeal, finding the appeal premature as administrative remedies were not exhausted because a State Engineer hearing was required by Section 72-2-16 prior to an appeal.

**{11}** Nearly one year later, the State Engineer ordered "[t]he sole issue to be addressed in [the hearing] is whether or not [Lion's Gate] can demonstrate, to the satisfaction of the State

---

[5]Section 72-7-1(E) provides:

The proceeding upon appeal shall be de novo as cases originally docketed in the district court. Evidence taken in a hearing before the state engineer may be considered as original evidence subject to legal objection, the same as if the evidence was originally offered in the district court. The court shall allow all amendments which may be necessary in furtherance of justice and may submit any question of fact arising therein to a jury or to one or more referees at its discretion.

[6]Interestingly, considering the contrary positions later taken in its briefs to this Court, Lion's Gate argued that under Section 72-5-7, the State Engineer was required "to summarily reject an application upon his determination that 'there is no unappropriated water available.'" Once such a determination is made, even without a hearing, "[f]urther administrative consideration of a rejected application under this statute is pointless because the statute constrains any further exercise of the State Engineer's discretion."

5

Engineer, that unappropriated water does exist[.]" In response, Lion's Gate again appealed to the Sixth Judicial District Court, arguing that "[t]he State Engineer has illegally denied Lion's Gate Water its constitutional right to fair and unbiased treatment of its Application" by limiting the issues to be heard. In addition, Lion's Gate argued that NMSA 1978, Section 72-5-6 (1985),[7] provides that the State Engineer can find that water is unavailable only "from the evidence presented by the parties interested" and must at the same time determine whether "the proposed appropriation is not contrary to the conservation of water," *id.*, whether it "is not detrimental to the public welfare of the state," *id.*, and whether it violates the rights of other water users, citing NMSA 1978, Section 72-5-5(A) (1985).[8] Thus, although Lion's Gate originally acknowledged that an application could be summarily rejected under Section 72-5-7 for failure to "comply with the requirements of the law and rules and regulations[,]" or where "contrary to the conservation of water within the state or detrimental to the public welfare of the state[,]" *id.*, it now argued that denial for lack of unappropriated water could only occur after a hearing of the type described in Section 72-5-6.

{12}    Lion's Gate now argued the following: (1) that it was no longer required to exhaust administrative remedies because Section 72-7-1(A) provides for court review of "any decision, act or refusal to act of the state engineer"; (2) that the State Engineer's limiting order was a "decision" and that it denied Lion's Gate its right to a fair hearing by improperly proscribing the issues relevant to a permit application; and (3) that because the State Engineer was proceeding improperly, and because appeals to the district court are de novo,

---

[7]Section 72-5-6 provides:

Upon the receipt of the proofs of publication, accompanied by any statutory fees required at this time, the state engineer shall determine, from the evidence presented by the parties interested, from such surveys of the water supply as may be available and from the records, whether there is unappropriated water available for the benefit of the applicant. If so, and if the proposed appropriation is not contrary to the conservation of water within the state and is not detrimental to the public welfare of the state, the state engineer shall endorse his approval on the application, which shall become a permit to appropriate water[.]

[8]Section 72-5-5(A) provides:

Whenever an application is filed which requires advertisement by virtue of the provisions of Chapter 72, Article 5 NMSA 1978, the advertisement shall state that objections or protests to the granting of the application may be filed with the state engineer within ten days after the last publication of the notice. If objection or protest is timely filed, the state engineer shall advise interested parties, and a hearing shall be held as otherwise provided by statute.

the district court should consider all relevant issues regarding its application and decide for itself the merits of Lion's Gate's permit application in the first instance.

**{13}** The district court again agreed with the State Engineer, finding in March 2005 that "[t]here is no statutory basis for Plaintiff to appeal prior to exhausting its administrative remedies." Denying a subsequent motion for reconsideration, the district court explained that it would not review non-final decisions of a hearing officer, and that "[i]t appears [that] the hearing officer intends to decide the *threshold* issue of whether there is water subject to appropriation. If there is, the Office of the State Engineer has a *duty* to proceed with other issues." On remand to the State Engineer, the Water Rights Division moved for summary judgment in September 2006, on the grounds that no unappropriated water was available for Lion's Gate's permit application. Lion's Gate cross-motioned for summary judgment, arguing that the State Engineer was attempting to replace itself or other governmental entities in southwestern New Mexico as the applicant for the Gila River water and it was denied the opportunity for discovery on that issue. As a consequence, Lion's Gate contended that it was denied a right to fully argue "issue number one, the availability of water." The hearing examiner for the State Engineer's Office, finding that there was no dispute of material fact, granted the Water Rights Division's motion for summary judgment in August 2007.

**{14}** Lion's Gate returned to the Sixth Judicial District Court in September 2007 to appeal the State Engineer's summary judgment. In December 2007, Lion's Gate moved the district court to establish appropriate procedures to reflect that its appeal under New Mexico Constitution Article XVI, Section 5, and Section 72-7-1(E) was "to be treated as an original case on the docket of this Court." The State Engineer responded that the de novo standard of review is broad, but applies only to "an underlying administrative decision of the State Engineer." The district court's ruling was somewhat ambiguous, providing that "[t]he Court may consider both new evidence and any evidence previously introduced at the administrative hearing" and that "[p]revious limitations on discovery, if any, do not apply to this appeal." Evidently seeking further clarification, Lion's Gate moved the district court to "allow[] Lion's Gate a trial de novo on all issues pertaining to its Application," as it was stuck in "a procedural quagmire of never-ending administrative hearings and appeals." Lion's Gate maintained that because (1) it had a right to trial de novo by statute and under the state constitution, (2) no objections had been filed regarding its published notice, and (3) the State Engineer had violated his statutory duties, the district court should hear all issues relating to the application rather than only reviewing the State Engineer's grant of summary judgment. The State Engineer argued that the district court's review should be limited to the issue decided below—whether water is available for appropriation—and that giving legal effect to Lion's Gate's notice publication could deny interested parties the right to participate in proceedings.

**{15}** On May 29, 2008, the district court granted trial de novo on all issues and made several findings now relevant on review:

13. [The State Engineer] admits it *never* held an evidentiary hearing on this matter despite representing to the Court that it would in both the 2003 and 2004 appeals. Instead, it made its decision based on summary judgment without evidentiary hearing.

. . . .

35. [The State Engineer] failed in its statutory obligation to provide notice of [Lion's Gate's] application.

. . . .

37. [Lion's Gate's] notice substantially complied with the notice statute and was sufficient to put the public on notice of their right to object.

38. No objections were filed.

. . . .

49. This Court has jurisdiction to hear all matters either presented or which might have been presented to [the State Engineer] as well as new evidence developed since the administrative hearing.

The district court has not ruled whether the State Engineer's grant of summary judgment was proper.

## II. DISCUSSION

{16}    We are asked to determine the meaning and purpose of New Mexico Constitution Article XVI, Section 5 and Section 72-7-1(E), which define the standard of review for appeals from the State Engineer to district court, and whether the Sixth Judicial District Court erred when it found that it has "jurisdiction to hear all matters either presented or which might have been presented to [the State Engineer] as well as new evidence developed since the administrative hearing." In addition, we are asked to determine the meaning of Sections 72-5-4 and 72-5-7, which govern the procedure for publishing notice of applications for permits to appropriate water, and whether Lion's Gate's notice publication substantially complied with the process prescribed by the statutes.

{17}    We conclude that a district court is limited to a de novo review of the issues decided by the State Engineer, which in this case is whether water is available for appropriation. We also hold that the water code requires publication of an application for a permit to appropriate only if water is found to be available by the State Engineer or by a district court on appeal, because no third-party rights are implicated unless water is available. Therefore, the State Engineer must order notice publication in a form prescribed by him or her if water

8

is deemed to be available. In this case, because notice was not published in accord with the State Engineer's prescribed form and was published following the State Engineer's determination that water was unavailable, Lion's Gate's self-published notice was unnecessary, unauthorized, and consequently of no legal effect.

## A.    STANDARD OF REVIEW

**{18}**    Our analysis is one of statutory construction, which is an issue of law; accordingly, we review the district court's findings and order de novo. *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. Also reviewed de novo is the extent of a court's appellate jurisdiction, which is a question of law. *City of Las Cruces v. Sanchez*, 2007-NMSC-042, ¶ 7, 142 N.M. 243, 164 P.3d 942.

## B.    DE NOVO REVIEW UNDER ARTICLE XVI, SECTION 5 AND SECTION 72-7-1(E)

**{19}**    The standard of review normally applied by appellate courts to administrative decisions is found in Rule 1-074(R) NMRA. It provides that judicial review is limited to determining

> (1) whether the agency acted fraudulently, arbitrarily or capriciously; (2) whether based upon the whole record on appeal, the decision of the agency is not supported by substantial evidence; (3) whether the action of the agency was outside the scope of authority of the agency; or (4) whether the action of the agency was otherwise not in accordance with law.

*Id.*; *see Johnson v. Sanchez*, 67 N.M. 41, 48-49, 351 P.2d 449, 454 (1960) (stating that the general rule guiding review of administrative agency appeals in New Mexico is that "the questions to be answered by the court are questions of law and are actually restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence, and, generally, whether the action of the administrative head was within the scope of his authority"). However, Section 72-7-1(E), reflecting a constitutional provision that is peculiar to water rights administration and the State Engineer, requires that appeals from the agency are to be reviewed "de novo as cases originally docketed in the district court." *Id.*; N.M. Const. art. XVI, § 5. Section 72-7-1(E) contemplates a new adjudication, allowing for "all amendments which may be necessary in furtherance of justice." *Town of Silver City v. Scartaccini*, 2006-NMCA-009, ¶ 9, 138 N.M. 813, 126 P.3d 1177 (quoting § 72-7-1(E) (internal quotation marks omitted)). Section 72-7-1(E), therefore, supersedes the general rule for judicial review of administrative agency appeals.

**{20}**    To understand the scope of de novo review of State Engineer actions as provided under Section 72-7-1(E) and pursuant to Article XVI, Section 5, it is necessary to review the history of these provisions and their development in New Mexico's water code. New

Mexico had already codified its current system of water laws by 1907, even before statehood in 1912 and the adoption of the state constitution in 1911, creating an exclusive and comprehensive means of acquiring water rights through the State Engineer. Section 72-5-1 (providing the only way to acquire a water right is to "make an application to the state engineer for a permit to appropriate, in the form required by the rules and regulations established by him"); *see State ex rel. Reynolds v. Aamodt*, 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990) (finding that "[t]he legislature granted the State Engineer broad powers to implement and enforce the water laws administered by him"). The 1907 codification of New Mexico's water law, which was a declaration of the common law as it then existed, *see Hagerman Irrigation Co. v. McMurry*, 16 N.M. 172, 180, 113 P. 823, 825 (1911), included a provision that "the decision, act or refusal to act of the territorial engineer" was appealable to a Board of Water Commissioners, whose decision could be appealed in turn to the district court. 1907 N.M. Laws, ch. 49, §§ 63, 65. The 1907 law provided that appeals to the district court

> shall be tried *de novo*, except that evidence which may have been taken in the hearing before the territorial engineer and said board and transcribed, may be considered as original evidence in the district court, and the court shall allow all amendments which may be necessary in furtherance of justice in all cases, appealed by petition or certiorari, or otherwise, and may submit any question of fact arising therein to a jury, or to one or more referees at its discretion.

*Id.* § 65 (emphasis added). This provision of the law was interpreted broadly at the time by this Court:

> The court may consider such evidence as has been introduced before the board and engineer, and transcribed and filed with it, but it also hears additional evidence, and is not called upon to determine whether the engineer or the Board of Water Commissioners erred in the action taken and order entered, but must form its own conclusion and enter such judgment, as the proof warrants and the law requires. It does not review the discretion of the engineer or the board, but determines, as in this case it was required by the issue presented, whether appellee's application to appropriate water should be granted. The court, in order to form a conclusion upon the issues, was necessarily required to determine, for itself, whether there was unappropriated water available; whether the approval of the application would be contrary to the public interest, and all other questions which the engineer was required, in the first instance, to determine. In such case the question recurs anew, as to whether the application shall be granted.

*Farmers' Dev. Co. v. Rayado Land & Irrigation Co.*, 18 N.M. 1, 9-10, 133 P. 104, 106 (1913), *overruled in part by Kelley v. Carlsbad Irrigation Dist.*, 71 N.M. 464, 467, 379 P.2d 763, 764 (1963).

**{21}** *Farmers'* interpretation of the scope of the district court's de novo review under the water code endured until this Court reconsidered the statute in *Kelley* in light of our separation of powers clause. 71 N.M. at 466-67, 379 P.2d at 763-65, *superseded by statute,* N.M. Const. art. XVI, § 5, *as recognized in Application of Carlsbad Irrigation Dist.*, 87 N.M. 149, 151, 530 P.2d 943, 945 (1974). This Court found that "the net effect of the admission and consideration by the trial court of . . . additional evidence . . . inevitably leads to the substitution of the court's discretion for that of the expert administrative body." *Kelley*, 71 N.M. at 466, 379 P.2d at 764 (quoting *Cont'l Oil Co. v. Oil Conservation Comm'n*, 70 N.M. 310, 325, 373 P.2d 809, 819 (1962) (internal quotation marks omitted)). Following this reasoning, *Kelley* held that the de novo provision of the statute

> does not permit the district court, in reviewing a decision of the state engineer, to hear new or additional evidence. The review by the court is limited to questions of law and restricted to whether, based upon the legal evidence produced at the hearing before the state engineer, that officer acted fraudulently, arbitrarily or capriciously; whether his action was substantially supported by the evidence; or, whether the action was within the scope of state engineer's authority.

*Id*. at 467, 379 P.2d at 764; *see also Durand v. Reynolds*, 75 N.M. 497, 499, 406 P.2d 817, 818 (1965) ("Thus the question that must be answered by this court is whether or not the findings of the state engineer are supported by substantial evidence; and if so, did the court properly apply the law?"); *Bennett v. State Corp. Comm'n*, 73 N.M. 126, 128, 385 P.2d 978, 980 (1963) ("Review by the district court, and by this court on appeal, is limited to questions of law, and is restricted to whether the commission's findings and order were supported by substantial evidence; were within the scope of its authority; and, whether the action was unlawful, arbitrary, capricious or unreasonable."); *Ingram v. Malone Farms, Inc.*, 72 N.M. 256, 258, 382 P.2d 981, 982 (1963) (holding that under *Kelley* district court was not permitted to hear new or additional evidence on review); *Cross v. Erickson,* 72 N.M. 73, 75, 380 P.2d 520, 521 (1963) (holding admission and consideration of expert testimony in district court was contrary to the holding of *Kelley* and therefore inadmissible); *McGee v. State ex rel. Reynolds*, 72 N.M. 48, 49, 380 P.2d 195, 195 (1963) ("[T]he district court in reviewing the decision of the State Engineer is not permitted under the statute . . . to hear new or additional evidence.").

**{22}** In response to *Kelley* and the subsequent cases overturning district court reviews of administrative agency actions, the New Mexico Constitutional Commission proposed an amendment to Article XVI that was adopted in November 1967. N.M. Const. art. XVI, § 5. The new section to Article XVI provides that "[i]n any appeal to the district court from the decision, act or refusal to act of any state executive officer or body in matters relating to water rights, the proceeding upon appeal shall be de novo as cases originally docketed in the district court unless otherwise provided by law." *Id.* Then in 1971, the Legislature passed amendments to what is now Section 72-7-1, adding the Section 5 language, "as cases originally docketed," to the State Engineer appeal statute. 1971 N.M. Laws, ch. 134, § 2.

11

Subsequently, when the meaning of the language was litigated, this Court rightly found that

> [t]here can be no doubt that the constitutional and statutory provisions for a proceeding de novo as cases originally docketed in the district court are inconsistent with our decision in *Kelly v. Carlsbad Irrigation District, . . .* insofar as we held that on appeals from the engineer: (1) The district court cannot hear new or additional evidence. (2) The district court cannot form its own conclusions based upon new or additional evidence. (3) The district court's review of a decision of the Engineer:
>
> > . . . is limited to questions of law and restricted to whether, based upon the legal evidence produced at the hearing before the state engineer, that officer acted fraudulently, arbitrarily or capriciously; whether his action was substantially supported by the evidence; or, whether the action was within the scope of state engineer's authority.

*Carlsbad Irrigation Dist.*, 87 N.M. at 151, 530 P.2d at 945 (quoting *Kelley*, 71 N.M. at 467, 379 P.2d at 764 (internal quotation marks omitted)). The Court went on to comment that

> [c]learly, our district courts, which are our courts of original trial jurisdiction, are not so limited in deciding the issues in "cases originally docketed" in those courts. They are our principal courts of record in which is vested the power to find facts. They also have the power to form conclusions based upon those facts, and to enter enforceable judgments, orders and decrees supported by those facts and conclusions.

*Carlsbad Irrigation Dist.*, 87 N.M. at 151-52, 530 P.2d at 945-46. The *Carlsbad Irrigation District* Court commented further that "[n]o limitations have been placed by law upon the power of our district courts in these appeals to find facts, make conclusions of law and enter such judgments, orders and decrees as are proper to dispose of the issues." *Id.* at 152, 530 P.2d at 946.

## C.    ANALYSIS

{23}    In determining whether the Sixth Judicial District Court has "jurisdiction to hear all matters either presented or which might have been presented to [the State Engineer] as well as new evidence developed since the administrative hearing[,]" we are constrained by the water code's statutory provisions. When interpreting statutes, "we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background," *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768, 918 P.2d 350, 354 (1996) as well as the plain meaning of the language. *State v. Moya*, 2007-NMSC-027, ¶ 6, 141 N.M. 817, 161 P.3d 862. When a statute is clear and unambiguous, we interpret it as written. *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d

12

64, 65 (1990). If, however, the statute's language is ambiguous, we must interpret the statute and determine legislative intent. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). The primary indicator of the Legislature's intent is the plain language of the statute. *Gen. Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Statutes are enacted as a whole, and consequently each section or part should be construed in connection with every other part or section, giving effect to each, and each provision is to be reconciled in a manner that is consistent and sensible so as "to produce a harmonious whole." *Key*, 121 N.M. at 769, 918 P.2d at 355. If the result of adopting a strict construction of the statutory language would be "absurd" or "unreasonable," then we interpret the statute "according to its obvious spirit or reason." *D'Antonio v. Garcia*, 2008-NMCA-139, ¶ 6, 145 N.M. 95, 194 P.3d 126 (quoting *Moya*, 2007-NMSC-027, ¶ 6) (internal quotation marks omitted).

**{24}** The general purpose of the water code's grant of broad powers to the State Engineer, especially regarding water rights applications, is to employ his or her expertise in hydrology and to manage those applications through an exclusive and comprehensive administrative process that maximizes resources through its efficiency, while seeking to protect the rights and interests of water rights applicants. *See Aamodt*, 111 N.M. at 5, 800 P.2d at 1062 ("The legislature granted the State Engineer broad powers to implement and enforce the water laws administered by him."); *see also* NMSA 1978, § 72-2-1 (1982) (providing that the State Engineer "has general supervision of waters of the state and of the measurement, appropriation, distribution thereof and such other duties as required"); NMSA 1978, § 72-2-8(H) (1967) (providing that "[a]ny regulation, code or order issued by the state engineer is presumed to be in proper implementation of the provisions of the water laws administered by him"); NMSA 1978, § 72-2-9 (1953) (providing that "[t]he state engineer shall have the supervision of the apportionment of water in this state"); § 72-5-1 (providing that the sole means for acquiring a water right is to "make an application to the state engineer for a permit to appropriate, in the form required by the rules and regulations established by him"). An exclusive and comprehensive administrative process is one that provides for a "'plain, adequate, and complete means of resolution through the administrative process to the courts.'" *U.S. Xpress, Inc. v. N.M. Taxation & Revenue Dep't*, 2006-NMSC-017, ¶ 12, 139 N.M. 589, 136 P.3d 999 (quoting *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶ 14, 124 N.M. 479, 952 P.2d 474). The "exclusivity of any statutory administrative remedy turns on legislative intent." *Barreras v. N.M. Corr. Dep't*, 2003-NMCA-027, ¶ 9, 133 N.M. 313, 62 P.3d 770. Factors assessed in determining such intent "include the comprehensiveness of the administrative scheme, the availability of judicial review, and the completeness of the administrative remedies afforded." *Id.* at ¶ 11. The comprehensive nature of the water code's administrative process, its mandate that a hearing must be held prior to any appeal to district court, and the broad powers granted to the State Engineer therein clearly express the Legislature's intent that the water code and the administrative process it describes provide a complete and exclusive means to acquire water rights. In light of this purpose, the water code's history, and this Court's precedent, we now consider the meaning of the statute's de novo provision.

**{25}** Lion's Gate's application for a permit to appropriate water was rejected because the State Engineer summarily found, in a pre-hearing determination, that no water was available to appropriate. Whether water is available for appropriation is the threshold issue that is dispositive of a permit application when water is not available for appropriation. The Legislature, in creating an efficient and effective administrative process for water rights applications, recognized the dispositive nature of this threshold issue when it crafted New Mexico's water code and mandated in Section 72-5-7 that the State Engineer "shall" summarily reject water rights applications upon a determination that water is unavailable for appropriation. Reading Section 72-5-7 harmoniously with Section 72-2-16, therefore, we conclude that the Legislature intended the State Engineer to employ his or her authority to efficiently dispose of applications without a hearing whenever he or she determines that water is unavailable to appropriate. However, an "aggrieved" applicant may request a post-decision hearing before the State Engineer if that request is timely, but no appeal can be made to district court "until the state engineer has held a hearing and entered his decision in the hearing." Section 72-2-16.

**{26}** If the State Engineer makes a pre-hearing determination that water is unavailable for appropriation, secondary issues that must otherwise be considered before a permit to appropriate water can be granted become irrelevant, because the State Engineer is *required* to reject the application without reaching those issues. Section 72-5-7; *see also* §§ 72-5-5 and -6. Examples of such secondary issues include whether the proposed appropriation is contrary to the conservation of water or would be detrimental to the public welfare or to an objecter's water right. Section 72-5-6. The effect of such an initial finding, therefore, is to limit the State Engineer's adjudicative jurisdiction over the application.

**{27}** This statutory requirement is clear and logical. From a determination that water is unavailable for appropriation follows the inevitable conclusion that any appropriation of water under these circumstances would be contrary to the conservation of water and detrimental to public welfare and prior water rights. As a result, those issues need not be reached by the State Engineer. Accordingly, after an initial finding that water is unavailable, the State Engineer is prohibited by statute from scheduling a Section 72-5-6 hearing, which is necessary only if the State Engineer initially determines that water is available for appropriation and otherwise finds that reasons for rejection provided in Section 72-5-7 are inapplicable. For the same reason, upon a pre-hearing or summary determination that water is unavailable to appropriate, the State Engineer is barred from reaching any of the secondary issues when an aggrieved applicant subsequently requests a Section 72-2-16 hearing, which is required by statute to perfect an appeal to the district court. Secondary issues become relevant and can be considered only if water is available to appropriate and if they have no bearing on the threshold issue of water's availability.

**{28}** Lion's Gate claims to be aggrieved by the State Engineer's refusal to consider these secondary issues, and contends that because it was denied the opportunity to argue the secondary issues before the State Engineer at a requested Section 72-2-16 hearing, these secondary issues should be considered by the district court on appeal according to the de

14

novo provisions of Section 72-7-1. Lion's Gate forcefully argues that the history of Article XVI, Section 5 and Section 72-7-1(E), construed together with our precedent, requires this Court to hold that the district court can properly consider all issues pertinent to its application for a permit to appropriate water as if the district court had original jurisdiction over the matter. Lion's Gate goes so far to say that what Article XVI, Section 5 of the New Mexico Constitution and Section 72-7-1 provide for is an appeal "in name only" because the statute "reiterates the Legislature's and the people's intention that the case be treated anew and *as an original action*." (Emphasis added.) Lion's Gate urges us to apply its fabricated principle that "a district court acquires complete jurisdiction over an administrative matter when a dispositive order is appealed to it." However, this cannot be what was intended by the water code or Article XVI, Section 5, nor does this contention accord with the purpose or the exclusive and comprehensive nature of the water code and the administrative process described therein. Reading Section 72-7-1 to equate a de novo scope of appellate review with a district court's original jurisdiction, as Lion's Gate would require, would render much of the water code and the administrative and remedial process it lays out superfluous, because then an appeal of any decision, act, or refusal to act on the part of the State Engineer could bring issues that the State Engineer had not yet considered before a district court for an initial determination. In addition, it would allow a water rights applicant to have the full merits of its application originally heard before a district court, rather than before the State Engineer.

{29}    A harmonious reading of the water code with Article XVI, Section 5 limits the district court's scope of appellate review to a de novo consideration of issues within the State Engineer's statutorily-defined jurisdiction. This avoids the "absurd" and "unreasonable" result that would ensue if water rights applicants, seeking a more favorable outcome, could transform district courts into general administrators of water rights applications by forcing district courts, rather than the State Engineer, to consider on appeal the merits of their applications. We do not find that such usurpation of the State Engineer's authority and jurisdiction under the water code was the intent of Article XVI, Section 5, Section 72-7-1, or our precedent. Lion's Gate's approach would defeat the administrative process for water rights applications designed and articulated by the Legislature. Because "we refrain from reading statutes in a way that renders provisions superfluous[,]" *State ex rel. Regents of ENMU v. Baca*, 2008-NMSC-047, ¶ 10, 144 N.M. 530, 189 P.3d 663, we cannot allow such an overly broad interpretation.

{30}    The purpose of the language contained in Article XVI, Section 5 and the 1971 amendment to Section 72-7-1, providing that appeals are to be de novo, "as cases originally docketed in the district court," was not to give the judiciary de facto original jurisdiction over water rights applications. As we have already discussed, that would create a short circuit in the administrative process, thereby frustrating the purpose of the water code and its broad grant of power to the State Engineer to oversee and administer water rights applications. Rather, the purpose of that language was to simply overrule the holding of *Kelley*, as this Court acknowledged in *Carlsbad Irrigation District*, 87 N.M. at 151-52, 530 P.2d at 945-46, and to emphasize that district courts are not limited to a record review of the

15

State Engineer's actions or to the standard of review provided under Rule 1-074(R). To that end, the district court can hear new and additional evidence and form its own conclusions based upon that evidence. In addition, its review of a State Engineer's decision is neither limited to questions of law nor restricted to determining whether the State Engineer acted arbitrarily or capriciously. Finally, the district court's review is not limited to whether a State Engineer's action was substantially supported by the evidence or whether the action was within the scope of the State Engineer's authority.

**{31}** Lion's Gate complains that this approach subjects water rights applicants to a "procedural morass" of never-ending administrative proceedings and the prospect of years of judicial review, because the State Engineer would have authority to consider an application to appropriate piecemeal, forcing an applicant to appeal each issue individually. The purpose of Article XVI, Section 5 and Section 72-7-1 in providing for de novo appeals, Lion's Gate argues, is to provide the means to overcome a piecemeal approach to the application process. We acknowledge the potential problem if every issue relevant to a water rights application could be partitioned by the State Engineer and litigated in isolation. Indeed, such a process, if put into practice, would completely defeat the purpose of creating an administrative agency to efficiently handle the complex and esoteric process of water rights applications. We do not find that this is the Legislature's intent, nor is it what the water code provides. Only when the State Engineer makes an initial determination that water is unavailable to appropriate is the State Engineer, and consequently the district court, jurisdictionally limited to consideration of that issue. Otherwise, following a determination that water is available to appropriate, the State Engineer must consider the full merits of an application and every constituent issue would be reviewable de novo on appeal. Therefore, under the statutory scheme created by the Legislature, no threat of an endless administrative morass looms, as Lion's Gate suggests. Rather, the morass in which Lion's Gate now finds itself is one that is almost entirely of its own making. The district court recognized that both parties contributed to procedural delays, but it was Lion's Gate that proclaimed that it would "litigate every issue" in the hearing, and then commenced to make good on that threat by filing multiple, premature appeals to the district court, resulting in a delay of several years to the resolution of the administrative process in this case.

**{32}** In a worst case scenario, from the perspective of a water rights applicant, the State Engineer could make a summary determination that water is unavailable for appropriation. The applicant would then request a Section 72-2-16 hearing before the State Engineer, who would be jurisdictionally limited to that dispositive, threshold issue. The applicant could then appeal the State Engineer's post-hearing finding on that issue to the district court, which would then reconsider, de novo, whether water is available. Upon a finding favorable to the applicant, the district court would then remand to the State Engineer to consider the application on its merits and for recommencement of the application process, including notice publication and a Section 72-5-6 hearing.

**{33}** This approach is entirely consistent with the seminal holding of *Farmers'*, 18 N.M. at 9-10, 133 P. at 106, interpreting the original de novo provision of New Mexico's water

16

code. *Farmers'* does not stand for the proposition that district courts can consider de novo the full merits of water rights applications on appeal after the State Engineer makes a summary determination that no water is available to appropriate and does not reach the merits. Rather, *Farmers'* accords with our holding in this case that district courts are limited to review of the threshold issue of whether water is available when the State Engineer makes a summary determination that it is not, but that the district court must consider the full merits when the State Engineer determines that water is available.

**{34}** In *Farmers'*, the State Engineer, implicitly finding that water was available to appropriate, "ordered notice to be given . . . of a hearing on said application[.]" 18 N.M. at 4, 133 P. at 104. Accordingly, the *Farmers'* Court held that the water code allows the district court to hear on appeal "such competent proof as may be offered by the parties interested in the proceeding[s], and form[] [an] independent judgment relative to the *issues* involved." *Id.* at 9, 133 P. at 106 (emphasis added). In that case, because the State Engineer had already considered the merits of the application, the district court, as required by de novo review, was "necessarily required to determine, for itself," each constituent issue relevant to the application on which the State Engineer had declined to act: "whether there was unappropriated water available; whether the approval of the application would be contrary to the public interest, and all other questions which the engineer was required, in the first instance, to determine." *Id.* In other words, under *Farmers'*, the water code's de novo standard constrains appellate review to "the issue presented[.]" *Id.* Because adoption of Article XVI, Section 5 and the subsequent amendment of Section 72-7-1 were intended to overrule *Kelley*, which had itself overruled *Farmers'*, we interpret the intent of both the constitutional amendment and the legislative amendment to the water code to indicate a purpose to return to the holding of *Farmers'*, which we construe narrowly. This approach conforms with our recent holding in *Smith v. City of Santa Fe*, in which we cautioned against actions that "would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, [or] disregard an exclusive statutory scheme for the review of administrative decisions[.]" 2007-NMSC-055, ¶ 15, 142 N.M. 786, 171 P.3d 300.

**{35}** As its final argument, Lion's Gate relies to a great extent on commentary culled from this Court's opinion in *Carlsbad Irrigation District*, 87 N.M. at 151-52, 530 P.2d at 945-46. In *Carlsbad Irrigation District*, after describing the holding, we stated that

> [c]learly, our district courts, which are our courts of original trial jurisdiction, are not so limited in deciding the issues in 'cases originally docketed' in those courts. They are our principal courts of record in which is vested the power to find facts. They also have the power to form conclusions based upon those facts, and to enter enforceable judgments, orders and decrees supported by those facts and conclusions.

*Id.* The *Carlsbad Irrigation District* Court further stated that "[n]o limitations have been placed by law upon the power of our district courts in these appeals to find facts, make

17

conclusions of law and enter such judgments, orders and decrees as are proper to dispose of *the issues*." *Id.* at 152, 530 P.2d at 946 (emphasis added). Lion's Gate finds support in these passages for its contention that the district court's jurisdiction is, in effect, unlimited on de novo review and that it can hear all issues that could have been before the State Engineer. We disagree. The dicta in *Carlsbad Irrigation District* simply emphasizes that the restrictive holding of *Kelley* no longer applies and the district court is not limited to a record review, but is free to find facts, make conclusions of law, and enter such judgments, orders, and decrees that it determines are necessary to dispose of the *issue(s)* decided by the State Engineer.

## III.    CONCLUSION

{36}    The statutory procedure for administering water rights applications created by the Legislature provides for a streamlined administrative process whereby the State Engineer can summarily dispose of applications when water is unavailable for appropriation. The process is balanced to preserve administrative and judicial resources and protect the rights and interests of applicants, the public, and prior appropriators. To construe the water code provisions as Lion's Gate would have this Court construe them would upset that balance, shifting the burden of the administrative process to the judiciary and diminishing the gatekeeper role of the State Engineer. Further, it would potentially and unnecessarily involve the public and prior appropriators before any third-party interests are implicated by a State Engineer determination that water is available to appropriate.

{37}    For the reasons stated herein, we reverse the district court's ruling and remand for further proceedings consistent with this opinion.

{38}    **IT IS SO ORDERED.**

 

_____

**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**


_____

**PATRICIO M. SERNA, Justice**


_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

18

**CHARLES W. DANIELS, Justice**

**Topic Index for *Lion's Gate Water v. D'Antonio*, No. 31,270**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-JR | Judicial Review |
| AL-LI | Legislative Intent |
| AL-SC | Scope of Review |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-CF | Certiorari |
| AE-IA | Interlocutory Appeal |
| AE-RM | Remand |
| AE-TN | Trial de Novo |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-NM | New Mexico Constitution, General |
| | |
| **GV** | **GOVERNMENT** |
| GV-SE | State Engineer |
| | |
| **JD** | **JURISDICTION** |
| JD-DC | District Court |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-WL | Water Law |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |