VIGIL, Chief Judge (dissenting in part, and specially concurring). {33} I dissent in part, and specially concur in the majority opinion for the reasons set forth below. DISSENT {34} The Code requires all health benefits plans in New Mexico to provide for medically necessary services. 13.10.17.29(C) NMAC (5/12/2012). However, HBOT treatments which Rodarte seeks to treat Jessica’s condition are without question experimental or investigational. As such, they are not “medically necessary” under Presbyterian’s plan[9] and they do not satisfy the Code’s general definition of “medical necessity” set forth in 13.10.17.7(L) NMAC (5/12/2012).[10] That is to say, until a treatment has been vetted and adopted as the standard of care by the federal government or national or professional medical practice guidelines, the treatment is not “medically necessary” under Presbyterian’s plan and the Code’s general provision. {35} However, the Code also recognizes that in particular cases an experimental or investigational treatment may be medically necessary for a particular patient such as Jessica. For these cases, the Code expands the classes of treatments that may be required and sets forth the parameters in which an experiment or investigational treatment may be medically necessary. This is 13.10.17.28 NMAC (5/12/2012).[11] Themajority concludes that Section .28 serves only a gatekeeper function by “merely” setting forth criteria to consider in determining whether to grant administrative review when a provider has denied coverage for an experimental or investigational treatment. Majority Op. ¶ 24. The majority then determines that an experimental or investigational treatment must fulfill an impossibility, which is to satisfy the Code’s general definition of “medical necessity” in Section .7(L), Majority Op. ¶ 25, and after weighing the evidence itself, concludes that the HBOT treatments are not “medically necessary” under Section .7(L). Majority Op. ¶ 27. I dissent from these conclusions. {36} Presbyterian denied coverage on the grounds there is no coverage for Jessica’s condition and because the treatment was for “experimental or investigational services [or] treatments.” Rodarte sought administrative review of the denial, and the Superintendent granted review under Section .28. The hearing panel appointed by the Superintendent, took evidence and made a recommended decision. It considered whether Jessica’s proposed treatment satisfied the criteria of Section .28, and concluded that it does not. The hearing panel therefore recommended upholding Presbyterian’s denial of HBOT treatments under Section .28. {37} The Superintendent upheld the hearing panel’s recommended decision to deny coverage. The Superintendent first stated that the issue presented in the administrative hearing under 13.10.17.29(C) NMAC (5/12/2012) was whether Jessica was deprived of “medically necessary covered services.” Thus, ruled the Superintendent, the services must be “medically necessary” before Presbyterian’s adverse determination could be reversed. Pertinent to the issue before us, the Superintendent specifically ruled, “Although not expressly stated in the regulations, it is reasonable to infer that, when a treatment is denied because it is deemed to be experimental or investigational, the standard for medical necessity set forth in [Section .28(B)], and relied on by the [p]anel, should be applied to the evidence in the record.” The Superintendent then specifically ruled that the HBOT treatment denied by Presbyterian “does not meet the requirements necessary to establish medical necessity[.]” The Superintendent also added, “pursuant to 13.10.17.B NMAC” which, as the majority opinion points out, does not exist. In my view this error is inconsequential, as the Superintendent and hearing panel are both clear that they were applying the standard of medical necessity under Section .28(B) in upholding Presbyterian’s denial. (I infer a typographical error in typing “13.10.17.B” instead of “13.10.17.28(B)”). {38} Rodarte then appealed to the district court, specifically arguing that the HBOT treatment was “medically necessary” under Section .28(B). As the majority points out, the district court ultimately considered whether the treatment satisfied the requirement of “medical necessity” in Section .28, Majority Op. ¶ 9. In its ruling, the district court ruled that “the proper standard for the ultimate agency review of the medical necessity of an experimental or investigational medical procedure is . . . [Section .28(B)],” and that the specific standard in Section .28(B) applies, rather than the more general definition of “medical necessity” found at Section .7(L). It is from this order that Presbyterian appeals. {39} Presbyterian, the hearing panel appointed by the Superintendent, the Superintendent, and the district court all concluded that the standard of “medical necessity” under Section .28(B) applies. Disagreeing, the majority holds that it is nothing more than something which must be considered in determining whether to grant administrative review. Majority Op. ¶ 24. Where the majority’s reasoning fails, however, is that it results in granting an administrative hearing which a patient can never win when coverage is sought for an experimental or investigational treatment, because such a treatment will never satisfy Section .7(L). As Rodarte points out, “[w]hat would be the point of permitting appeals that could never, by definition, succeed?” The answer is that the Code does not provide for a meaningless hearing. Instead, as the Superintendent ruled, when a treatment is denied because it is deemed to be experimental or investigational, the standard of medical necessity in Section .28(B) governs. {40} Administrative regulations are to be interpreted under the same basic principles that guide interpretation of statutes. See PC Carter Co. v. Miller, 2011-NMCA-052, ¶ 11, 149 N.M. 660, 253 P.3d 950. As such, “each section or part should be construed in connection with every other part or section, giving effect to each, and each provision is to be reconciled in a manner that is consistent and sensible so as to produce a harmonious whole.” Lion’s Gate Water v. D’Antonio, 2009-NMSC-057, ¶ 23, 147, N.M. 523, 226 P.3d 622 (internal quotation marks and citation omitted). Moreover, “The general/specific rule provides that when two statutes deal with the same subject matter, the statute dealing with a specific subject will be considered an exception to, and given effect over, the more general statute.” Lu v. Educ. Trust Bd. of N.M., 2013-NMCA-010, ¶ 13, 293 P.3d 186 (alteration, internal quotation marks, and citation omitted). Finally, a regulation should be interpreted with common sense, and an interpretation that leads to absurdity or contradiction should be avoided. See Baker v. Hedstrom, 2013-NMSC-043, ¶ 36, 309 P.3d 1047. Application of these settled principles requires that, in the case of an experimental or investigational treatment, the definition of “medical necessity” in Section .28 governs instead of the general definition of “medical necessity” in Section ,7(L). Since the majority disagrees, I dissent. I therefore agree with the hearing panel, the Superintendent, and the district court that Section .28 governs administrative review when treatment has been denied on the basis that it is experimental or investigational. SPECIAL CONCURRENCE {41} The foregoing dissent notwithstanding, I agree with the majority that the order of the district court must be reversed. However, I arrive at this conclusion under Section .28. {42} Under subsection (A) of Section.28, it must be considered: (1) whether HBOT reasonably appears to be a covered benefit under Presbyterian’s plan, except for Presbyterian’s determination that HBOT is experimental or investigational; and (2) HBOT is not explicitly listed as an exclusion under Presbyterian’s plan. Part I of the majority opinion in ¶¶ 12-16 demonstrates that Presbyterian’s insurance contract does not provide coverage for Jessica’s medical condition. I fully concur in this portion of the majority opinion. Moreover, this part of the majority opinion also demonstrates that the HBOT treatments are not only not specifically covered under Presbyterian’s health plan, they are specifically excluded. I therefore conclude that Rodarte failed to prove that subsection (A) of Section .28 was satisfied. {43} I next consider whether subsection (B) of Section .28 was satisfied. The issue presented to the hearing panel was whether the HBOT treatments were “medicallynecessary” under Section .28(B)(3)(b). {44} In seeking to prove such “medical necessity” Jessica’s treating physician, Dr. Ken Stoller certified that there is no standard health care service covered by Presbyterian that is as beneficial or more beneficial than the proposed HBOT treatments. The hearing panel noted, however, that “the issue is a lack of high level research studies such as those done in a prospective, randomized, controlled, double-blinded fashion. Dr. Stoller presented several case studies in his materials, but case studies are not a substitute [for] the types of studies just described in the medical field.” After noting Jessica’s treatments by Dr. Stoller, and Jessica’s response to those treatments, the hearing panel concluded, “Due to the lack of evidence that HBOT caused Ms. Ro darte’s alleged improvements and the fact that she was provided HBOT treatment within the first year following her diagnosis of anoxic encephalopathy when spontaneous improvement can occur, it is not clear that HBOT caused Ms. Rodarte’s improvements.” Based on its review of the evidence, the hearing panel concluded that the evidence failed to demonstrate that the HBOT treatments were medically necessary under Section .28(B). The Superintendent in turn adopted, approved, and accepted the hearing panel’s recommendation. {45} I conclude that substantial evidence supports the Superintendent’s conclusion that the HBOT treatments were not medically necessary under Section .28(B). I therefore agree with the majority that the district court erred. However, I disagree with the majority that independently examining the evidence to determine whether it satisfies section ,7(L) is necessary or appropriate. See Majority Op. ¶¶ 26-28. {46} I therefore specially concur in the result reached. MICHAEL E. VIGIL, Chief Judge Presbyterian’s insurance contract defines “medical necessity” to be: “appropriate or necessary services as determined by a Provider/Practitioner, in consultation with Presbyterian... which are provided to a Member for any covei-ed condition requiring, according to generally accepted principles of good medical practice guidelines developed by the federal government, national or professional medical societies, boards, and associations, or any applicable clinical protocols or practice guidelines developed by [Presbyterian] consistent with such federal, national and professional practice guidelines for the diagnosis or direct care and treatment of an illness, injury, or medical condition, and are not services provided only as a convenience.” “Unless otherwise indicated, all future references shall be to the 2012 version, and for ease of reference shall be referred to as “Section .7(L).” Section ,7(L) defines “medical necessity or medically necessary” as: “health care services determined by a provider, in consultation with the health care insurer, to be appropriate or necessary, according to any applicable generally accepted principles and practices of good medical care or practice guidelines developed by the federal government, national or professional medical societies, boards and associations, or any applicable clinical protocols or practice guidelines developed by the health care insurer consistent with such federal, national, and professional practice guidelines, for the diagnosis or direct care and treatment of a physical, behavioral, or mental health condition, illness, injury, or disease[.]” Unless otherwise indicated, all future references shall be to the 2012 version, and for ease of reference shall be referred to as “Section .28.” In its entirety Section .28 provides: A. coverage; the recommended or requested health care service: (1) reasonably appears to be a covered benefit under the grievant’s health benefit plan except for the health care insurer’s determination that the health care service is experimental or investigational for a particular medical condition; and (2) is not explicitly listed as an excluded benefit under the grievant’s health benefit plan; and B. medical necessity; the grievant’s treating provider has certified that: (1) standard health care services have not been effective in improving the grievant’s condition; or (2) standard health care services are not medically appropriate for the grievant; or (3) there is no standard health care service covered by the health care insurer that is as beneficial or more beneficial than the health care service: (a) recommended by the grievant’s treating provider that the treating provider certifies in writing is likely to be more beneficial to the grievant, in the treating provider’s opinion, than standard health care services; or (b) requested by the grievant regarding which the grievant’s treating provider, who is a licensed, board certified or board eligible physician qualified to practice in the area of medicine appropriate to treat the grievant’s condition, has certified in writing that scientifically valid studies using accepted protocols demonstrate that the health care service requested by the grievant is likely to bo more beneficial to the grievant than available standard health care services.