The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 29, 2022

**NO. S-1-SC-38376**

**STATE OF NEW MEXICO,**

Petitioner,

v.

**RYAN JAMES ALAN THOMPSON,**

Respondent.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sarah L. Weaver, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Charles Agoos, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

{1}     In every felony case in which a sentence of imprisonment is imposed, the defendant is required to serve a period of parole after that sentence. *See* NMSA 1978, § 31-18-15(C) (2022) (imposing period of parole for felony convictions resulting in a sentence of more than one year). Parole may be served within the penitentiary (in-house parole) or outside the penitentiary (in the community). After completing a sentence for a first-, second-, or third-degree felony, a defendant must serve two years of parole, and for a fourth-degree felony, one year of parole. NMSA 1978, Section 31-21-10(C) (2005, amended 2009). Sex offenders face much longer, indeterminate, supervised parole requirements: five to twenty years for certain sex offenses, and five years to life for more serious sex offenses. NMSA 1978, § 31-21-10.1(A)(1), (2) (2004, amended 2007). To determine whether a sex offender's parole will terminate at five years or continue, the parole board holds a duration-review hearing at which the State has the burden of proving that the sex offender should remain on parole. Section 31-21-10.1(B) (2004) (amended and recompiled as Section 31-21-10.1(C) in 2007). Sex offenders are entitled to this hearing before the parole board after serving "the initial five years of supervised parole, [and] at two and one-half year intervals" thereafter. *Id.*

{2}     The question presented in this habeas corpus case is whether, under the 2004 version of Section 31-21-10.1, the version that was in effect when the criminal complaint in this case was filed, a period of in-house parole counts toward "the initial five years of supervised parole," § 31-21-10.1(B) (2004), needed to receive a duration-review hearing, or only parole served outside the penitentiary in the community counts. It is undisputed that if in-house parole counts, Respondent Ryan James Alan Thompson is entitled to a duration-review hearing, and if it does not count, he is not. Thompson filed a petition for habeas corpus in the district court contending that he was entitled to a duration-review hearing or, because he had not received one, release from parole. The State argued that Thompson was not entitled to a duration-review hearing because only parole served for five consecutive years in the community counts.

{3}     The district court agreed in part with Thompson and ordered a duration-review hearing but denied Thompson's request for release from parole. The State appeals. This Court has jurisdiction pursuant to Rule 12-102(A)(3) NMRA. We affirm the district court, and we decline to address Thompson's argument, raised for the first time in his answer brief, that Section 31-21-10.1(B) (2004) is facially unconstitutional.

# I. BACKGROUND

## A. Factual Background

{4}    Thompson was charged with several counts of manufacturing and possessing child pornography in August 2005, and in 2007 pleaded no contest to one count of manufacturing child pornography contrary to NMSA 1978, Section 30-6A-3(D) (2001, amended 2016), a second-degree felony. Thompson received a basic sentence of nine years, which was suspended in favor of a five- to twenty-year period of supervised probation. Thompson was also ordered to serve a five- to twenty-year period of indeterminate supervised parole sentence upon completion of his prison term as required by Section 31-21-10.1(A) (2004).

{5}    As a consequence of probation violations, Thompson was ultimately ordered to serve out his basic sentence in prison. Thompson's basic sentence expired in July 2013. He was not immediately released from prison to parole in the community but, instead, remained in prison until November 2013, serving in-house parole. In-house parole is "commonly known as the time period where an inmate has completed his basic sentence but is still incarcerated [and] in the custody of the Corrections Department." *See* New Mexico Corrections Department, Institutional Classification, Inmate Risk Assessment and Central Office Classification, 20 (2001), https://www.cd.nm.gov/wp-content/uploads/2021/07/CD-080100-Institutional-

Classification-Inmate-Risk-Assessment-and-Central-Office-Classification.pdf (last visited Sept. 20, 2022) (requiring a determination as to whether "the inmate's legal status needs to be changed to in-house parole").

{6}  In November 2013, after serving one hundred thirty-seven days of in-house parole, Thompson was released and began serving parole in the community. He had been on parole in the community for about a year when he violated parole and was returned to the Corrections Department. Forty-two days later, a parole revocation hearing was held, and Thompson's parole in the community was revoked, meaning he would once again begin serving in-house parole. The notice of action memorandum letting Thompson know his parole in the community had been revoked stated, "You will be granted full credit while on parole." The memorandum also stated that the parole board "will review for reconsideration upon inmate written request in twelve months." It is up to the discretion of the parole board whether an inmate should be released to the community upon reconsideration. *See* NMSA 1978, § 31-21-25(B)(1) (2001). From then on, Thompson's parole period continued to be a combination of parole in the community and parole in-house, with more time spent in-house.

{7}  In 2015, while serving in-house parole, Thompson wrote a letter to the parole board asking when his duration-review hearing would be. The director of the parole

4

board responded, "Your 5 year review hearing must be an uninterrupted term of parole and you have not yet met that. When you reparole the 5 years will start once again." Two months later the director clarified, "you can do up to the 18 or so years you have remaining on parole incarcerated if you don't reparole." In 2018, Thompson again inquired as to his duration-review hearing and this time the director said, "Review hearings are when you have been in the community successfully for at least five years."

**B.     The District Court Ruling**

{8}     After exhausting his remedies with the parole board, Thompson filed a pro se petition for habeas corpus in district court. Counsel was appointed, and his attorney filed an amended petition for habeas corpus. In the petition, Thompson raised the legal argument presented to this Court: that under Section 31-21-10.1(B) (2004), the parole board is required to hold a duration-review hearing after five years of parole, regardless of whether the parole served is in-house or in the community. The petition lacked any argument about the constitutionality of Section 31-21-10.1 (2004). Thompson requested that the district court order a duration-review hearing because, when counting his in-house parole, he had served more than five years of parole. In his supplemental brief, Thompson requested discharge from parole because, in his

5

view, his parole term expired because of the State's failure to provide him with a duration-review hearing.

{9} The State did not challenge whether Thompson would be entitled to a hearing if his in-house parole counted toward duration-hearing eligibility. However, the State contended that Thompson's in-house parole time did not count toward the five years for a duration-review hearing, and that only parole served in the community did. The State relied on the definition of parole set forth in NMSA 1978, Section 31-21-5(B) (1991), which states, "'parole' means the release to the community of an inmate of an institution by decision of the board or by operation of law subject to conditions imposed by the board and to its supervision."

{10} On May 8, 2020, the district court granted Thompson's requested relief in part, declining to terminate his parole altogether and instead ordering a duration-review hearing without delay. The district court ruled "that the 'initial five years of supervised parole' that triggers the duration-review hearing required under [Section] 31-21-10.1(B) [(2004)] refers to all periods of time following completion of the basic sentence in prison." And because Thompson, as of March 31, 2020, had "been under the constraint of the Corrections Department for approximately 6 years and 10 months," he was entitled to a duration-review hearing. In its order, the district court provided a detailed explanation for its decision.

6

{11} The district court agreed that while the plain meaning of the definition of "parole" in Section 31-21-5(B) as "time served in the community" supported the State's argument, it could not agree that this led to the inexorable conclusion that time spent in prison could never be said to be part of the service of parole under Section 31-21-10.1(B) (2004). The district court gave three reasons for its ruling.

{12} First, parole is served in prison when an inmate is serving consecutive sentences. This is because, when "an inmate who is serving consecutive sentences completes the basic sentence of the first crime . . . the inmate immediately begins to serve the associated parole, in prison, while simultaneously beginning service of the basic sentence for the next crime." *See Brock v. Sullivan*, 1987-NMSC-013, ¶ 13, 105 N.M. 412, 733 P.2d 860 ("[I]n the case of consecutive sentencing, the parole period of each offense commences immediately after the period of imprisonment for that offense, and such parole time will run concurrently with the running of any subsequent basic sentence then being served.").

{13} Second, service of parole in prison is recognized by statute. For example, NMSA 1978, Section 31-21-11 (2005) provides, "Prisoners who are otherwise eligible for parole may be paroled to . . . serve another sentence within the penitentiary . . . or residential treatment program determined necessary by the board." The district court also pointed to Section 31-21-10(D) (2005). Under Section

31-21-10(D) (2005), if an inmate is eligible for release on parole but does not have an approved parole plan or refuses to sign the statement of parole conditions, the inmate must remain in the institution in which the sentence was served. Any time served under these conditions counts towards the inmate's parole sentence. *Id.*

{14} Third, the district court determined that the State's interpretation of Section 31-21-10.1(B) (2004) "leads to a nonsensical result." The result referenced by the district court was that an inmate could remain in prison for the entire duration of the parole period—either twenty years or a life term, depending on the offense—without being afforded the duration-review hearing contemplated by the Legislature.

{15} The district court therefore concluded that "there exists a level of ambiguity that requires application of the rule of lenity" notwithstanding that the statutory definition of "parole" is "facially plain," and the district court applied the rule of lenity to "resolve doubts about the meaning of paroled in [Section] 31-21-10.1(B) [(2004)] in favor of [Thompson]." The State appealed.

## II.   DISCUSSION

{16} Section 31-21-10.1(B) (2004) directs, in relevant part, "When a sex offender has served the initial five years of supervised parole, the board shall . . . review the duration of the sex offender's supervised parole." At each duration-review hearing, the state has the burden of proving that the sex offender should remain on parole. *Id.*

8

Here, the specific question raised by the State's appeal is whether, under Section 31-21-10.1(B) (2004), "parole" includes in-house parole—parole served in prison—or only parole served outside the prison—in the community.

**A.     Standard of Review**

{17}     This case presents a question of statutory construction that is subject to de novo review. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. This Court's "primary goal is to ascertain and give effect to the intent of the Legislature." *Id.* The primary indicator of legislative intent is the plain language of a statute. *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23, 147 N.M. 523, 226 P.3d 622. And yet, "we must exercise caution in applying the plain meaning rule." *State v. Maestas*, 2007-NMSC-001, ¶ 16, 140 N.M. 836, 149 P.3d 933. "In interpreting statutory language as well as in much of the other work courts are called on to perform, it is necessary to think thoughts and not words." *State v. Strauch*, 2015-NMSC-009, ¶ 13, 345 P.3d 317. "Statutes are enacted as a whole, and consequently each section or part should be construed in connection with every other part or section, giving effect to each, and each provision is to be reconciled in a manner that is consistent and sensible so as to produce a harmonious whole." *Lion's Gate Water*, 2009-NMSC-057, ¶ 23 (internal quotation marks and citation omitted).

{18} In determining legislative intent, we consider the legislative history of the act under consideration, including its historical amendments as well as the context in which the act under consideration was adopted. *Maestas*, 2007-NMSC-001, ¶¶16-19. We also presume that the Legislature is well informed and aware of existing statutory and common law. *Id*. ¶ 21. "If the result of adopting a strict construction of the statutory language would be absurd or unreasonable, then we interpret the statute according to its obvious spirit or reason." *Lion's Gate Water*, 2009-NMSC-057, ¶ 23 (internal quotation marks and citation omitted); *see also In re Grace H.*, 2014-NMSC-034, ¶ 34, 335 P.3d 746 ("[T]he Court rejects a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." (internal quotation marks and citation omitted)).

**B.     Section 31-21-10.1(B) (2004) Mandates a Duration-Review Hearing After Five Years of Supervised Parole, Whether In an Institution or the Community**

{19} The State relies almost entirely on the plain meaning of parole as defined in Section 31-21-5(B): "'parole' means the *release to the community* of an inmate of an institution by decision of the board or by operation of law subject to conditions imposed by the board and to its supervision." (Emphasis added.) In addition to the definition of parole, the State argues that the language in Section 31-21-10.1(C) (2004) and Section 31-21-10.1(E) (2007) proves that parole cannot be served in

10

prison. Section 31-21-10.1(C) (2004) provides, "The board may order a sex offender *released on parole* to abide by reasonable terms and conditions of parole." (Emphasis added.) Similarly, Section 31-21-10.1(E) (2007) provides, "The board shall require electronic real-time monitoring of every sex offender *released on parole*." (Emphasis added.) The reference to these statutes does not meaningfully advance the State's position because neither does much to connect the statutory definition of parole to legislative intent or to the rest of the related statutory scheme. *See, e.g.*, § 31-21-11 (providing that a parolee may be "paroled to detainers to serve another sentence within the penitentiary"). The State's argument rises or falls with the force of the definitional statute, § 31-21-5(B).

{20} In tension with the definition of parole in Section 31-21-5(B), there are statutes and case law that contemplate in-house parole. Importantly, the Legislature's statement of purpose of the Probation and Parole Act explicitly states that parole can be served in an institutional setting "when a period of institutional treatment is deemed essential in the light of the needs of public safety and [the parolee's] own welfare." NMSA 1978, § 31-21-4 (1963). In addition, Section 31-21-10(E) (2005), as the district court discussed, provides that an inmate who is otherwise eligible for release to the community but does not have an approved parole plan or refuses to sign-off on the conditions of parole must remain in prison. That

11

time in prison counts as time served on the parole sentence. *See* § 31-21-10(D) (2005) ("Time served from the date that an inmate refuses to accept and agree to the conditions of parole or fails to receive approval for [the inmate's] parole plan shall reduce the period, if any, to be served under parole at a later date."). Section 31-21-11, which was also discussed by the district court, provides that inmates who are parole-eligible "may be paroled to detainers to serve another sentence within the penitentiary" or to any other therapeutic or rehabilitative institution at the discretion of the parole board. NMSA 1978, Section 31-20-5(B)(2) (2003) also refers to parole service in prison: "if parole is revoked, the period of parole served in the custody of a correctional facility shall not be credited as time served on probation." These statutes are incompatible with the definition of parole in Section 31-21-5(B).

{21}  Although no case squarely addresses the question presented here, cases have acknowledged or contemplated parole served in an institution. The *Brock* Court, for example, held that an inmate serving consecutive sentences can serve the parole sentence that follows the basic sentence for one conviction while serving the basic sentence in prison for another. 1987-NMSC-013, ¶¶ 1-2, 12-13; *see also Gillespie v. State*, 1988-NMSC-068, ¶¶ 1-3, 5, 107 N.M. 455, 760 P.2d 147 (holding in the context of consecutive sentences that parole could be served in prison). Other cases also acknowledge that parole can be served in an institution, if in passing. *See, e.g.,*

12

*State v. Utley*, 2008-NMCA-080, ¶¶ 2, 9, 144 N.M. 275, 186 P.3d 904 (noting that the district court ordered the defendant to serve her two-year parole period "in an intensive in-patient treatment program"); *Stephens v. Thomas*, 19 F.3d 498, 499 (10th Cir. 1994) (stating that the inmate, "after having served six years and four months on his life sentence, . . . was paroled 'in house'"). In reality, then, parole is sometimes served in institutions, including prison, and not exclusively in the community.

{22}   The State implicitly concedes one pivotal idea established by the statutes and cases described above: namely, that Section 31-21-5(B)'s definition of parole is not categorically applicable. The State acknowledges that time spent in prison by a sex offender during the parole period counts for jurisdictional purposes. It also notes that the parole board agrees that in-house parole counts "towards . . . [p]arole time." And the State recognizes that parole can be served in prison in the context of consecutive sentences. The State's concession—and more importantly, the meaning of the statutes and case law discussed above—demonstrate that parole cannot be categorically defined by the plain meaning of the words in Section 31-21-5(B).

{23}   Under the literal statutory definition of parole, it is unclear what, exactly, a parolee who has completed his or her basic sentence is doing in prison if not serving parole. As explained above, a parolee can be incarcerated during the parole period

13

that follows the completion of the basic sentence for several reasons: (1) because of the lack of an approved parole plan, (2) because the inmate refused to approve conditions of parole, or (3) as a consequence of a parole violation. But what term describes a person's confinement under those circumstances? Under Thompson's definition of parole, the explanation is straightforward: that person is on parole. Similarly, if a parolee was placed in an institution during the parole period, as in *Utley*, 2008-NMCA-080, ¶¶ 2, 9, the person is serving parole. But, if parole must be served in the community as defined in Section 31-21-5(B), what is a person doing in prison or an institution after completing the basic sentence for his or her crime? The State offers no meaningful explanation. The strict application of the statutory definition of parole leads to an unreasonable result, thereby undermining a literal reading of the statutory definition. *See Morris v. Brandenburg*, 2016-NMSC-027, ¶ 15, 376 P.3d 836 ("Unless it would lead to an unreasonable result, we regard a statute's definition of a term as the Legislature's intended meaning."); *Wilschinsky v. Medina*, 1989-NMSC-047, ¶ 26, 108 N.M. 511, 775 P.2d 713 ("While courts normally are bound to follow legislative definitions, they are not bound when a definition would result in an unreasonable classification."); 2A Norman J. Singer & Shambie Singer, *Sutherland Statutory Constr*. § 47.7 (7th ed. 2014) ("Courts may not be bound by statutory definitions where they are arbitrary and result in

14

unreasonable classifications, or if they are uncertain, or defeat a statute's major purpose, or where some other contrary intent clearly appears." (footnote omitted)).

{24} The legislative history of the applicable statutes and the context in which they were enacted provides us with an answer as to whether the Legislature intended in-house parole to count toward "the initial five years of supervised parole" needed to receive a duration-review hearing under Section 31-21-10.1(B) (2004). Pertinent to the issue before us, in 1963, the Legislature described how it intended the Probation and Parole Act to be construed and its intended purpose as follows:

> The Probation and Parole Act shall be liberally construed to the end that the treatment of persons convicted of crime [shall be treated according to] their individual characteristics, circumstances, needs and potentialities . . . and that such persons shall be dealt with in the community . . . under probation supervision instead of in an institution, *or under parole supervision when a period of institutional treatment is deemed essential* in the light of the needs of public safety and their own welfare.

Section 31-21-4 (emphasis added). In 1980, the Legislature enacted Section 31-21-10(D) providing that an inmate who does not have an approved parole plan for any reason "shall not be released" and that the time served counts as time served under parole. *See* 1980 N.M. Laws, ch. 28, § 1. Further, the 1982 version of Section 31-21-11 allowed for in-house parole when a prisoner is "paroled to detainers to serve another sentence." 1982 N.M. Laws, ch. 107, § 2. Thereafter, in 1991, the Legislature amended the statutory definition of parole. *See* 1991 N.M. Laws, ch. 52,

15

§ 1. However, the Legislature did not tamper with or modify Section 31-21-10(E), the 1982 version of Section 31-21-11, or any other statutes recognizing in-house parole.

{25} Then, in 2003, the Legislature required sex offenders to serve "not less than five years" of supervised parole and mandated that the parole board review the duration of the sex offender's supervised parole when the sex offender "has served the initial five years of supervised parole." 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 9; *see also* § 31-21-10.1(A), (B) (2004). Again, the Legislature did not modify or change any of the provisions allowing for in-house parole when it had another opportunity to eliminate in-house parole as parole. Further, it is unmistakable that the Legislature intended that the duration-review hearing be conducted after the sex offender has served the initial minimum five years of mandatory parole. *See* § 30-21-10.1(B) (2004) (providing for the board's review after "a sex offender has served the initial five years of supervised parole"). After the sex offender serves the minimum five years of parole, the offender gets a hearing to see if he or she should remain on parole. *Id.* This makes sense. We give effect to the Legislature's clear intent by recognizing that the term "initial five years of supervised parole" in Section 31-21-10.1(B) (2004) includes all time served during the parole sentence, whether in prison as set forth in Section 31-21-10(D) (2005), a rehabilitative institution

16

pursuant to Section 31- 21-11, or the community as provided by Section 31-21-5(B). *See Maestas*, 2007-NMSC-001, ¶¶14-17.

{26} The rule of lenity also supports our conclusion. Under the rule of lenity, "the tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008). Where "text, structure, and history fail to establish that the government's position is unambiguously correct," the rule of lenity applies. *United States v. Granderson*, 511 U.S. 39, 54 (1994); *see also State v. Ogden*, 1994-NMSC-029, ¶ 26, 118 N.M. 234, 880 P.2d 845 ("[L]enity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies[] of the statute" (internal quotation marks and citation omitted)). And this Court relies on the rule of lenity to "resolve any doubt concerning the construction of a sentencing statute." *Brock*, 1987-NMSC-013, ¶ 8; *see also United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (stating that the rule of lenity is applied to resolve ambiguity in sentencing). Because the tension between statutory provisions addressing the scope of parole service may obscure the intent of the Legislature or render it ambiguous, the rule of lenity applies to resolve any doubt in favor of Thompson and, accordingly, the definition of parole adopted by the district court should be affirmed.

17

**C. We Decline to Address Thompson's Constitutional Challenges to Section 31-21-10.1(B) (2004) Because They Are Not Properly Before Us**

{27} There are significant procedural concerns about Thompson's constitutional challenges to Section 31-21-10.1(B) (2004) that he raises for the first time in his answer brief. Thompson petitioned the district court for a writ of habeas corpus, requesting to be released from parole or, in the alternative, granted a duration-review hearing. The district court granted the requested relief in part by ordering a duration-review hearing. The State then appealed pursuant to Rule 5-802(N)(1) NMRA and Rule 12-102(A)(3). The State's appeal is the only issue before this Court. Thompson neither petitioned for a writ of certiorari pursuant to Rule 5-802(N)(2) nor filed a cross-appeal pursuant to Rule 12-201(B)(1) NMRA regarding the constitutional issues. As such, he is before this Court in a strictly defensive posture, defending the district court's ruling, and he cannot attack the ruling of the district court from his answer brief.

{28} Rule 12-201(C), entitled "Review without cross-appeal," provides:

> An appellee may, without taking a cross-appeal or filing a docketing statement or statement of the issues, raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from.

Under this rule, "an appellee need not cross-appeal to raise an issue that would preserve the judgment below." *Morris v. Brandenburg*, 2015-NMCA-100, ¶ 16, 356

18

P.3d 564 (internal quotation marks and citation omitted), *aff'd*, 2016-NMSC-027, ¶ 58.

{29} Here, by arguing that Section 31-21-10.1(B) (2004) is facially unconstitutional, Thompson is not raising an issue that would preserve the judgment below. Because we affirm the district court on statutory grounds, we decline to address Thompson's constitutional challenges to Section 31-21-10.1(B) (2004). *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." (internal quotation marks and citation omitted)).

## III.  CONCLUSION

{30} We hold that the term "initial five years of supervised parole" in Section 31-21-10.1(B) (2004) includes all time served during the parole sentence, whether in prison as contemplated by Section 31-21-10(D) (2005), a rehabilitative institution pursuant to Section 31- 21-11, or the community as set forth in Section 31-21-5(B). We do not address whether Thompson should be released from parole. Such a decision lies within the expertise and powers of the parole board. *See* 67A C.J.S. *Pardon & Parole* § 49 (2022) ("Under statutory authority, a parole may be granted by, and only by, the board or other body or officer on whom the authority is conferred."); *Id*. § 50 ("Broad authority with respect to paroles may be delegated to

a parole board, and the basic responsibility of such a board may be to determine when a prisoner is to be released from prison."). We therefore affirm the district court and order the State to afford Thompson a duration-review hearing without delay.

{31}   **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**

**C. SHANNON BACON, Chief Justice, concurring in dissent**

**DAVID K. THOMSON, Justice, dissenting**

20

**THOMSON, Justice (dissenting).**

{32}    The consequences of a legislative policy embodied in an unambiguous statute are matters for the Legislature, not for this Court. *Irvine v. St. Joseph Hosp., Inc.*, 1984-NMCA-107, ¶ 15, 102 N.M. 572, 698 P.2d 442. As such, it is the province of the Legislature and not the court to change a statute. *Varos v. Union Oil Co. of Cal.*, 1984-NMCA-091, ¶ 6, 101 N.M. 713, 688 P.2d 31. Respectfully, I conclude that the statutory language requiring a sex offender to successfully serve parole in the community for five years before that person is entitled to a parole review hearing is clear. The majority's efforts to find ambiguity where none exists usurp the authority of the Legislature to decide matters of policy. For that reason, I respectfully dissent.

{33}    Our Legislature has decided, "When a sex offender has served the initial five years of supervised parole, and at two and one-half year intervals thereafter, the board shall review the duration of the sex offender's supervised parole." NMSA 1978, § 31-21-10.1(C) (2007). As the law is currently written, parole is defined as "the release *to the community* of an inmate of an institution by decision of the board or by operation of law subject to conditions imposed by the board." NMSA 1978, § 31-21-5(B) (1991) (emphasis added). The core question is whether the Legislature intended to make a parole review hearing available for a convicted sex offender who

21

has not shown the ability to abide by conditions of release in the community.[1] *See* § 31-21-10.1(B)(4), (C), (D); *see also* NMSA 1978, § 31-21-5(B).

{34}     The majority's reading of the parole statute concludes that the district court's grant of habeas relief was proper because all the time Defendant served on his sentence after he completed his basic sentence of incarceration counted toward the five-year period before a review hearing. This includes time when he was removed from the community and put back in prison for violating parole, *see maj. op.* ¶¶ 16, 19. I disagree with my colleagues' conclusion for two reasons. First and foremost, the majority ignores the plain reading of the statute and in doing so amends the sex offender parole statutes to write out a critical requirement that parole be served by an individual released "to the community." Section 31-21-5(B). Next, it creates an ambiguity where none exists by confusing the term of parole a defendant serves with the defendant's first opportunity for a parole review hearing. *See maj. op.* ¶ 25. My

---

[1]Pending disposition in this case, this Court currently holds in abeyance its review of nine cases with similar underlying issues. Five of the nine—*State v. Padilla,* S-1-SC-38668; *State v. Pelt,* S-1-SC-38669; *State v. Padilla*, S-1-SC-38919; *State v. Pinto*, S-1-SC-38927; and *State v. Aragon,* S-1-SC-39194—like this case, are state's appeals under Rule 12-102(A)(3) NMRA. Each of the remaining four—*Barker v. Martinez*, S-1-SC-38796; *Emord v. Martinez*, S-1-SC-38798; *Ronquillo v. Martinez*, S-1-SC-39166; and *Aragon v. Martinez*, S-1-SC-39172—is a defendant's petition for writ of certiorari under Rule 12-501 NMRA, two of which this Court has granted.

reasoning herein explains that the Legislature's goal was to provide sex offenders with an opportunity to reintegrate with the community, demonstrate a capacity for rehabilitation, and earn the public's trust.

{35} Defendant was remanded "to the custody of the New Mexico Corrections Department to be confined for a term of nine (9) years" and released under "supervised parole for a period of not less than five (5) years and not in excess of twenty (20) years subject to the statutory provision relating to conditions of parole and supervision and the return of parolees." *See* NMSA 1978, § 31-18-15(A)(6) (2007); *see also* § 31-21-10.1(A). Part of Defendant's sentence was initially suspended, but his probation was revoked for violating "a substantial condition," and he had to serve the remainder of his suspended sentence in custody.

{36} Immediately after completing his sentence of imprisonment, Defendant was conditionally released on parole in the community with the understanding that he would adhere to all standard conditions of release and several special conditions, including but not limited to (1) having no contact with any victim, no social networking, and no contact with anyone under eighteen years of age, (2) participating in a sex offender treatment program, and (3) registering as a sex offender within ten days of release. Defendant served about one year of parole in the community before he was returned to custody for violating multiple conditions of

23

release. A pattern of release on parole in the community and return to custody for failure to comply with the imposed conditions of release continued, with Defendant spending more time in prison than out. In my view, these facts highlight the need to apply the clear language of the sex offender parole statute.

{37} The district court acknowledged, as the majority must, that the plain meaning of "parole . . . supports [the State's a]rgument that parole means only time served in the community." The statutory analysis involved in this case is not complicated. We must remember that "[w]hen a term is . . . defined in a statute" there is no need to construe the term, because the Legislature has expressly defined it. *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863. Only "[w]hen a term is not defined in a statute [do] we . . . construe it, giving those words their ordinary meaning absent clear and express legislative intention to the contrary." *Id.* (internal quotation marks omitted). As our statute provides, sex offenders can have their parole terms reviewed, but there are two eligibility conditions. The first condition is provided by Section 31-21-10.1(C), which requires that the "sex offender has served the initial five years of supervised parole" before the offender is eligible for a review hearing; and the second condition set by Section 31-21-5(B) requires that parole be served during "the release *to the community*." (Emphasis added.)

24

{38} Rather than applying the Legislature's express definition of *parole* in Section 31-21-5(B), and reading the parole statutes harmoniously, the majority finds the term *parole* in Section 31-21-10.1, to be ambiguous. *Maj. op.* ¶ 26. The majority reasons that if *in-house* time (the time Defendant served while in custody for failing to comply with his conditions of release) counts towards the total term of Defendant's parole sentence, it must also count as *parole*, as that term of art is used in granting Defendant a review hearing. *Maj. op.* ¶¶ 20, 24. This analysis confuses the policy differences between the calculation of time that counts toward the term of parole and time that counts toward a review hearing. It creates a conflict where none exist and abandons our duty, "[w]henever possible, [. . . to] read different legislative enactments as harmonious instead of as contradicting one another." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M 372, 98 P.3d 1022 (internal quotation marks and citation omitted).

{39} To create an ambiguity in Section 31-21-10.1 and thus apply the rule of lenity in favor of granting Defendant a parole review hearing, the majority seizes on another section of the parole statute unrelated to this question. The majority reasons, and Defendant now argues, that the Legislature's allowance contained in NMSA 1978, Section 31-21-11 (2005) altered the meaning of the Legislature's express definition of *parole* in Section 31-21-5(B). *Maj. op.* ¶¶ 21-23. The majority bolsters

25

its conclusion by observing that time served *in-house* while awaiting release prior to the approval of an initial parole plan, or while returned to custody for violating the conditions of release pending a new parole plan, also counts toward the total amount of time served, subject to state jurisdiction, under a sentence.

{40}    The district court framed the question this way. "If the four (4) years, seven (7) months, and four (4) days [Defendant] has been in prison since he completed his basic sentence is not parole, then what is it?"[2] The direct answer to both the district court and the majority is that although those four years, seven months, and four days count towards the completion of Defendant's maximum *sentence*, including his sentence of parole, this time does not necessarily count toward the period of time that triggers the required duration review hearing for sex offenders because the time was not served "in the community." *See* § 31-21-5(B); NMSA 1978, § 31-21-10(E) (2009) (providing that "[e]very person while on parole shall remain in the legal custody of the institution from which the person was released, but shall be subject to the orders of the board" and providing prerequisites for release).

---

[2]The majority asks, "[W]hat is a person doing in prison or an institution after completing the basic sentence for his or her crime . . . if parole must be served in the community as defined in Section 31-21-5(B)?" *Maj. op.* ¶ 23.

26

{41} The majority's construction of the statutory provisions at issue effectively permits an exception that swallows the rule. The majority rewrites Section 31-21-11—and, in effect, Section 31-21-5(B)—to require all time served, whether *in-house* or "in the community," to count when calculating the five-year period triggering the sex offender's right to a hearing. *Maj. op.* ¶¶ 23-25. I acknowledge that the time served *in-house* counts toward the term of Defendant's indefinite parole sentence, but that is not the issue. *See maj. op.* ¶ 22. Even though time served *in-house* for violating conditions of release decreases the amount of time a parolee must serve under a sentence of parole, whether such time served in-house advances a sex offender's opportunity for a parole review hearing is a different matter.

{42} The Legislature expressly defined *parole* in Section 31-21-5(B): "As used in the Probation and Parole Act, . . . 'parole' means the release to the community of an inmate of an institution by decision of the board or by operation of law subject to conditions imposed by the board and to its supervision." This express definition controls. *See Johnson*, 2009-NMSC-049, ¶ 10. Section 31-21-11 creates exceptions that allow the time a defendant serves *in-house* to count toward the total length of the defendant's sentence, during which the state retains jurisdiction, whether or not the defendant is imprisoned or released into parole in the community. Section 31-21-11 does not nullify the express definition of *parole*, which distinguishes time

27

served under supervision "to the community." Nor does Section 31-21-11 create an ambiguity. The majority's construction of *parole* as used in Section 31-21-10.1(C) ignores the Legislature's public policy goals for permitting release on parole, and these must be considered.

{43} Generally, under New Mexico's sentencing scheme, the Legislature has provided the parole board with authority to grant and supervise a period of release into the community following service of an inmate's sentence of incarceration for felony and capital offenses. *See* NMSA 1978, § 31-21-10 (2009) (providing authority to grant parole to individuals, including those sentenced to life imprisonment with the possibility of parole, if certain conditions are met and establishing required periods of parole for inmates convicted of felony offenses "[e]xcept for . . . sex offenders").

{44} The goal of sex offender parole is to constructively rehabilitate convicted individuals "in the community . . . in the light of the needs of public safety." NMSA 1978, § 31-21-4 (1963). "Prior to placing a sex offender on parole," the parole board must consider "the danger to the community posed by the sex offender." Section 31-21-10.1(B)(4). Although constructive rehabilitation in the community is the goal, in some instances, a convicted individual may be returned to incarceration for violating the conditions of release to the community. *See* NMSA 1978, § 31-21-14(C) (1963)

("Upon arrest and detention, the board shall [hold] a parole revocation hearing on the parole violation charged, . . . [and i]f violation is established, the board may continue or revoke the parole . . . .").

{45} Because of the particular concerns with recidivism based on the general nature of sex offenses, the Legislature chose to impose different requirements for the parole of sex offenders, including an indeterminate term of parole rather than a defined term. *Compare* NMSA 1978, § 31-21-10 (2003, amended 2009) (establishing "[p]arole authority and procedure" generally), *with* NMSA 1978, § 31-21-10.1 (2003, amended 2007) (establishing the special authority and procedures for parole concerning certain sex offenders); *see also* 2004 N.M. Laws, ch. 1, § 9 (1st Spec. Sess.) ("AN ACT RELATED TO SEX OFFENDERS: . . . PROVIDING THAT A SEX OFFENDER MAY BE PLACED ON PAROLE FOR A PERIOD OF UP TO TWENTY YEARS . . . ."). In 2007, the Legislature amended Section 31-21-10.1 and reaffirmed its intent to subject sex offenders to "indeterminate period[s]" of parole, which require periodic review by the parole board to determine whether the sex offender should remain on supervised parole. *See* 2007 N.M. Laws, ch. 68, § 4; 2007 N.M. Laws, ch. 69, § 4. Section 31-21-10.1 grants the parole board authority to supervise a sex offender's parole, set the terms and conditions of the parole, and

shorten a sex offender's indeterminate period of parole to "less than the maximum" period if certain conditions are met. *Id.*

{46} The 2007 amendments also mandated "electronic real-time monitoring of every sex offender released on parole for the entire time the sex offender is on parole." 2007 N.M. Laws, ch. 69, § 4; § 31-21-10.1(E) The amendment to Section 31-21-10.1 thus included specific requirements to be in place when a sex offender is "released on parole" *in the community*. For example, a sex offender is responsible for ensuring that the battery powering the individual monitoring unit remains charged and that the unit remains in contact with the monitoring system. *See, e.g.*, *State v. Chavez*, 2019-NMCA-068, ¶¶ 4, 26, 451 P.3d 115 (discussing a sex offender's probation violations for failure to maintain continual contact through the electronic monitoring system as evidence affirming that the offender should not be released from his indeterminate period of supervised probation). That is, the Legislature made clear its intent that if a person is convicted of a sex offense and is on Section 31-21-10.1 parole, that person is monitored *in the community*. It follows that when a convicted individual is incarcerated for violating the conditions of release, as in the present case, the time served in custody does not satisfy the plain language of the definitional statute, § 31-21-5(B). Respectfully, it is absurd given this clear policy expression that the Legislature would approve a reading that the

30

statute allows a sex offender returned to custody for having violated conditions of release to count that time in custody toward the sex offender's review hearing.

{47} More broadly, the majority opinion, in my view, fails in its misunderstanding of the fundamentals of parole. This leads to rewriting a statute that directly contradicts the policy choice of the legislative branch. When one properly understands the history and background of the Criminal Sentencing Act and its impact on the Parole and Probation Act, no ambiguity can be derived from the plain language of Section 31-21-5(B).

{48} Defendant's argument, accepted by the majority, is based on an unsupported inference that the Criminal Sentencing Act was enacted in 1977 in part to transform the nature of parole, ostensibly in a manner that would ease the burden of sanctions for criminal behavior. In fact, the opposite was true. The Criminal Sentencing Act, intending to provide tougher sanctions for criminal behavior, reconfigured the concept of parole in New Mexico as an extended period of post-incarceration state control to deter recidivism. Allison G. Karslake & Kathleen Kennedy Townsend, *Definite Sentencing in New Mexico: The 1977 Criminal Sentencing Act*, 9 N.M. L. Rev. 131, 131-34 (1979).

{49} The threat of potential incarceration for violating the terms of release to parole serves a deterrent function, encouraging compliance with a convicted individual's

conditions of release. However, the possibility of being returned to incarceration, and allowing part of a sentence of parole to be served while incarcerated, does not render the Legislature's express definition of *parole* meaningless or ambiguous.

{50}     Parole, as it is understood in New Mexico, was altered in 1977, when the Legislature passed the Criminal Sentencing Act. *See* 1977 N.M. Laws, ch. 216, § 1; NMSA 1978, §§ 31-18-1 to -26 (1977, as amended through 2022). In so doing, New Mexico created a scheme of "definite sentencing"; the "'primary objective'" was to "'get tough on criminals'" and "require lengthier periods of incarceration." Karslake & Townsend, *supra* at 131-32 (citation omitted). Prior to the passage of the Criminal Sentencing Act, New Mexico's "indefinite" sentencing scheme allowed a judge to sentence a convicted individual to be incarcerated for "a range of years, and the Parole Board" would decide when that individual would "be released from prison. If [the individual was] released before the expiration of [the] maximum sentence, [the individual would be] released conditionally, or on parole." *Id.* at 131. Such a sentence of incarceration was described as "indefinite." *Id.*

{51}     Prior to 1977 and unlike the current sentencing scheme, an individual's parole was not set at sentencing. Instead, parole was a discretionary act of clemency that allowed release from incarceration back in to the community before the expiration of a sentence of imprisonment. *See Robinson v. Cox*, 1966-NMSC-210, ¶ 6, 77 N.M.

55, 419 P.2d 253 ("A release on parole is an act of clemency or grace resting entirely within the discretion of the parole board. One who is paroled is not thereby released from custody but is merely permitted to serve a portion of his sentence outside the walls of the penitentiary.").

{52} In contrast, New Mexico sanctioned parole after 1977 as a period of supervised release to the community following the basic sentence of incarceration during which an individual could be returned to imprisonment so long as the total term of the maximum sentence had not expired. *See* 1977 N.M. Laws, ch. 216, § 4(C); § 31-18-15(C) (2022) (stating that "the period of parole shall be deemed to be part of the sentence of the convicted person"). The sentence of parole became a definite part of the sentencing scheme, set at sentencing, directly following the "basic sentence" of imprisonment. *See Brock v. Sullivan*, 1987-NMSC-013, ¶¶ 7, 9-10, 105 N.M. 412, 733 P.2d 860. Thus, a convicted individual's maximum sentence often contains a sentence of parole geared toward, but not completely functioning as, rehabilitation. *See* § 31-21-4 (providing that "rehabilitation . . . in the light of the needs of public safety" is the goal of parole). The sentence of parole retains a punitive aspect, which is intended to act as a deterrence—the potential return to incarceration of an individual who has not adhered to specified conditions of release. *See* § 31-21-14(C).

33

{53} Although the Legislature's decision to allow individuals "who are otherwise eligible for parole" to "be paroled to detainers to serve another sentence" superficially appears to be at odds with the holding I support, it is not. That is, Section 31-21-11 (providing for the possibility of in-house parole) simply disallows the practice of "stacking . . . multiple parole periods," which would "compel [a] prisoner to serve [a] sentence in installments." *Brock*, 1987-NMSC-013, ¶¶ 6, 10 (internal quotation marks omitted). Again, allowing time served while incarcerated to count against the ultimate term that an individual is required to serve on a sentence that provides for the possibility of parole does not relate to (nor change the statute that creates) eligibility of a sex offender to have a parole review hearing.

{54} The threat of incarceration while an individual remains on parole operates functionally as a *stick*, as opposed to a corresponding *carrot*, which is release under conditions and supervision in the community. *See* 1977 N.M. Laws, ch. 216, § 11(B) (amending the previous definition of "parole" in the Probation and Parole Act, 1963 N.M. Laws, ch. 301, § 3(B), by omitting "prior to the expiration of [the prisoner's] term" and adding "or by operation of law"); *see also* 1977 N.M. Laws 1977, ch. 216, § 4(C) ("The period of parole . . . shall be part of the sentence."). The hybrid construction of parole was a compromise that allowed the New Mexico criminal

34

justice system to retain some measure of rehabilitative justice. *See* Karslake & Townsend, *supra* at 133-34.

{55} After a convicted sex offender has served the basic sentence of imprisonment, the goal should be to find a way to successfully release the incarcerated defendant to supervised parole within the community in the hope that the defendant ultimately will be rehabilitated and released early from parole. *See* § 31-21-10.1(C). This is entirely consistent with other policy decisions of the Legislature governing the monitoring of sex offenders. *See, e.g.*, § 31-21-10.1(D) (authorizing "intensive supervision," including "alcohol testing, drug testing or polygraph examinations used to determine if the sex offender is in compliance with the terms and conditions of the sex offender's parole" and prohibiting "contact with certain persons or classes of persons"); § 31-21-10.1(E) (requiring continuous and accurate "real-time monitoring of every sex offender released on parole for the entire time the sex offender is on parole").

{56} The purpose of parole is to allow an individual the opportunity to reintegrate into the community after a period of incarceration to prove the individual's capacity for rehabilitation. And when an individual has repeatedly demonstrated an inability to adhere to conditions of release as in this case, it seems futile to require a hearing where the purposes of parole have not been fulfilled and where persistence of "clear

35

and convincing evidence that the sex offender should remain on parole" is likely. Section 31-21-10.1(C).

{57} Based on the foregoing, I would hold that there is no ambiguity in Section 31-21-10.1(C). I would therefore reverse the district court and vacate the order granting Defendant's petition for a writ of habeas corpus.

_____

**DAVID K. THOMSON, Justice**

**I CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**