The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 24, 2022

**No. A-1-CA-39074**

**SOPURKH KAUR KHALSA, SHAKTI PARWHA KAUR KHALSA, and EK ONG KAR KAUR KHALSA, Trustees of the YOGI BHAJAN ADMINISTRATIVE TRUST,**

Plaintiffs-Appellees,

v.

**INDERJIT KAUR PURI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Sanders & Westbrook, PC
Maureen A. Sanders
Albuquerque, NM

for Appellees

The Soni Law Firm
Surjit P. Soni
Pasadena, CA

The Bowles Law Firm
Jason Bowles
Albuquerque, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

{1} Inderjit Kaur Puri (Bibiji) appeals the district court's order granting the Trustees of the Yogi Bhajan Administrative Trust's (the Trustees) motion for sanctions based on Bibiji's failure to comply with a court order to produce documents in aid of execution of an attorney fees judgment. Bibiji argues (1) the Trustees improperly served a subpoena, rendering the subpoena invalid; (2) the district court lacked authority to order discovery in aid of enforcement of a judgment in light of the Trustees' failure to issue or properly serve a document request pursuant to Rule 1-034 NMRA; (3) the district court erred by ordering Bibiji to produce privileged documents; and (4) the district court's sanctions award constituted an abuse of discretion and violated due process. We affirm.

**BACKGROUND**

{2} This appeal arises from the Trustees' attempt to collect attorney fees after a judgment for $718,720.63 in fees was entered in their favor in 2014. It is Bibiji's fifth appeal to this Court in the course of this litigation, which is now more than fourteen years old. The Trustees sued Bibiji seeking a declaratory judgment that Bibiji was not entitled to any distributions from the trust. The district court dismissed the Trustees' complaint, but the case proceeded to trial on Bibiji's counterclaims. The Trustees prevailed, and the district court ordered Bibiji to pay the Trustees'

attorney fees and costs. This Court affirmed. *See Khalsa v. Puri*, 2015-NMCA-027, ¶¶ 1, 74-75, 344 P.3d 1036. Bibiji filed an appeal specific to the award of attorney fees, and this Court affirmed that award in a separate opinion. *See Khalsa v. Puri*, No. 33,622, mem. op. ¶¶ 11-12 (N.M. Ct. App. Apr. 14, 2015) (nonprecedential). Although the Trustees garnished an arbitration award in 2017 to partially satisfy the attorney fees judgment, and the priority of the garnishment was affirmed on appeal, *see Khalsa v. Puri*, A-1-CA-36701, mem. op. ¶¶ 1, 18-19 (N.M. Ct. App. Feb. 2, 2021) (nonprecedential), Bibiji has yet to pay the Trustees any of the attorney fees judgment that remains. In its 2017 order denying Bibiji's motion to stay enforcement of the Trustees' priority garnishment, the district court noted that Bibiji's debt under the attorney fees judgment, with interest, exceeded $1 million.

{3}     Further discussion of facts necessary for our analysis will be discussed below.

**DISCUSSION**

**I.     The District Court Did Not Err in Entering the Discovery Order**

{4}     Seeking information about Bibiji's financial ability to pay the attorney fees judgment, in March 2015 the Trustees filed a request for a Rule 1-069(A) NMRA debtor's examination of Bibiji, to which they attached a copy of the subpoena and a list of documents Bibiji was directed to bring to the examination. The Trustees requested a setting, and the subpoena was issued. The Trustees then filed a notice of Rule 1-069 debtor's examination duces tecum that included the same list of

requested documents, which was served on Bibiji's attorney of record through Odyssey on May 20, 2015. That same day the Trustees' process server delivered the subpoena for a Rule 1-069(A) debtor's examination duces tecum to Bibiji's attorney of record. Attached to the subpoena was the list of requested documents. Bibiji moved to quash the subpoena and vacate the Rule 1-069 hearing, and for a protective order. In June 2015 the district court held a hearing on the motion and issued an order (the discovery order) concluding that service of the subpoena through Bibiji's attorney of record was effective pursuant to Rule 1-089(D) NMRA and directing Bibiji to produce certain documents requested by the Trustees.

{5}    Bibiji argues that a subpoena issued pursuant to Rule 1-069(A) must be personally served and that she was not properly served because the Trustees served the subpoena on her attorney. Bibiji thus contends the service was ineffective. As a result, Bibiji argues, the district court lacked authority to enter the discovery order, pointing to the Trustees' failure to otherwise issue or properly serve a Rule 1-034 document request. We disagree.

{6}    Bibiji's argument requires us to interpret the rules of civil procedure, a matter we review de novo. *Becenti v. Becenti*, 2004-NMCA-091, ¶ 6, 136 N.M. 124, 94 P.3d 867. "[W]e apply the same canons of interpretation [to our rules of civil procedures] that we use when interpreting statutes." *Deutsche Bank Nat'l Tr. Co. v. Valerio*, 2021-NMCA-035, ¶ 16, 493 P.3d 493. Thus, "[w]e approach the

interpretation of rules . . . by seeking to determine the underlying intent." *State v. Miller*, 2008-NMCA-048, ¶ 11, 143 N.M. 777, 182 P.3d 158; *see also Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545 ("In construing the language of a [rule], our goal and guiding principle is to give effect to the intent of the [drafters].").
"The primary indicator of . . . intent is the plain language of the [rule]." *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23, 147 N.M. 523, 226 P.3d 622. And yet, "courts must exercise caution in applying the plain meaning rule." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. In interpreting the language of a rule, we consider the thought behind the language and not merely the specific words chosen. *See State v. Thompson*, ___-NMSC-___, ¶ 17, __P.3d__ (S-1-SC-38376, Sept. 29, 2022); *State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 54, 285 P.3d 622. "[Rules] are enacted as a whole, and consequently each section or part should be construed in connection with every other part or section, giving effect to each, and each provision is to be reconciled in a manner that is consistent and sensible so as to produce a harmonious whole." *Lion's Gate Water*, 2009-NMSC-057, ¶ 23 (internal quotation marks and citation omitted). In construing a rule, we consider its purpose in conjunction with other rules. *See In re Michael L.*, 2002-NMCA-076, ¶ 10, 132 N.M. 479, 50 P.3d 574.

{7}     In arguing that service of the subpoena duces tecum on her attorney was ineffective, Bibiji relies on the language of Rule 1-069 and Rule 1-045 NMRA

4

(2009),[1] which provides that when a judgment debtor is subpoenaed to appear at a debtor's examination, *see* Rule 1-069(A), "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person." Rule 1-045(B)(2). The Trustees respond by pointing to other rules which, they argue, indicate that service of a subpoena duces tecum on the attorney of record of a party to ongoing litigation, as occurred here, is permissible. We agree with the Trustees.

{8} Construing Rule 1-069 in conjunction with other rules and in light of the rules' purpose, we conclude that deeming ineffective the service of a subpoena duces tecum on the attorney of record of a party to ongoing litigation[2] would be contrary to the rules' "underlying intent." *See Miller*, 2008-NMCA-048, ¶ 11. To begin, Rule 1-005 NMRA establishes an intent that the attorney of a party to ongoing litigation receive service of all pleadings, discovery requests, and other documents and notices. Rule 1-005(A) provides, in relevant part:

---

[1]Unless otherwise noted, all citations to Rule 1-045 in this opinion are to the 2009 amendment, which was the version applicable when the subpoena at issue was served.

[2]The parties litigated various issues in the district court between the date the attorney fees judgment was entered in February 2014, and the date the notice of Rule 1-069 debtor's examination duces tecum and subpoena duces tecum were served in May 2015. We also note that, one month before the Trustees effected service of the subpoena duces tecum, Bibiji's attorney filed a notice of unavailability in which he requested that no hearing "in this matter" be set for the next several weeks due to other engagements. The notice indicates that Bibiji's attorney considered the matter an active case such that it was necessary to inform the court of his temporary unavailability for hearings.

Except as otherwise provided in these rules, . . . every pleading subsequent to the original complaint . . ., every paper relating to discovery required to be served upon a party, unless the court otherwise orders, . . . and every written notice, appearance, . . . and similar paper shall be served upon each of the parties.

{9} The rule further provides that "[w]henever under these rules service is required or permitted to be made upon a party represented by an attorney, *the service shall be made upon the attorney*." *Id.* (emphases added); *accord* Rule 1-045(B)(2)(b) ("Prior to or at the same time as service of any subpoena commanding production of documents . . . before trial, *notice shall be served on each party in the manner prescribed by Rule 1-005*." (emphases added)). Accordingly, the rules indicate that the Trustees appropriately served the notice of Rule 1-069 debtor's examination duces tecum on Bibiji's attorney of record, pursuant to Rule 1-005.

{10} The rules similarly demonstrate an underlying intent to permit service of a subpoena duces tecum on the attorney of party to ongoing litigation. Rule 1-030(B)(5) NMRA provides, "The notice to a party deponent may be accompanied by a request made in compliance with Rule 1-034 . . . for the production of documents." Rule 1-034, in turn, provides that such a request for documents "may . . . be served . . . on any . . . party with or after service of the summons and complaint on that party," Rule 1-034(B), and distinguishes between parties and nonparties. *See* Rule 1-034(C) ("A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 1-045.").

Thus, service of a deposition notice accompanied by a request for documents—in essence a subpoena duces tecum—is permitted to be made, pursuant to Rule 1-030(B)(5) and Rule 1-005(B), on the attorney representing the deposed party.

{11}     Similarly, Rule 1-089(D), upon which the district court relied to determine that the Trustees had effected valid service of the subpoena duces tecum on Bibiji's attorney, demonstrates an underlying intent that a party's attorney of record may remain subject to service in cases in which a judgment subject to appeal has been entered but the attorney remains engaged in related litigation. *See* Rule 1-089(D) ("Attorneys of record shall continue to be subject to service for ninety (90) days after entry of final judgment."). Construing Rule 1-089(D) in conjunction with rules relating to service of discovery requests on a party is also consistent with Rule 1-069(B), which provides that a judgment creditor may, in certain circumstances, obtain discovery from any person "in any manner provided in these rules."

{12}     Moreover, our construction of these rules is consistent with our directive to construe the rules to achieve their purpose, that is, "to secure the just, speedy and inexpensive determination of every action." Rule 1-001(A) NMRA. Rule 1-001 is "intended to allow for the liberal construction of the rules." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2008-NMCA-013, ¶ 15, 143 N.M. 404, 176 P.3d 1136; *see id.* ¶ 17 (noting that "New Mexico appellate opinions have recognized . . . the flexibility of the Rules of Civil Procedure," allowing courts "the flexibility to address

7

ambiguity in a rule that would allow alternative outcomes"). This Court has recognized that the "prime purpose of the new rules is to eliminate delays resulting from reliance upon pure technicalities and generally to streamline and simplify procedure so that the merits of the case might be reached." *Id.* ¶ 17 (internal quotation marks and citation omitted).

{13}     Construing Rule 1-069 to permit service of a subpoena duces tecum on the attorney of a party in ongoing litigation furthers this "prime purpose." By contrast, deeming such service inadequate in cases in which the attorney of a party involved in ongoing litigation has received notice of a subpoena duces tecum and responded to it, as occurred here, would lead to unnecessary delay resulting from reliance upon a technicality, frustrating the district court's ability to reach the merits of the case. Service of a subpoena duces tecum on the attorney of a party in these circumstances is generally sufficient, we think, to "ensure receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be consistent with the requirements of due process." 9 James Wm. Moore, et al., *Moore's Federal Practice* § 45.21[1] (Lexis 2022) (stating the "apparent purpose" of the language of Rule 45 of the Federal Rules of Civil Procedure calling for "delivering" a copy of a subpoena to the person named, but noting that "[r]equiring personal service of a subpoena . . . seems unduly restrictive"). Permitting such service is thus consistent with the purpose of the rules.

{14}     Accordingly, we conclude that service of the Trustees' subpoena duces tecum to Bibiji through her attorney of record was effective, and therefore valid. Having determined that the discovery order was based on a valid subpoena, we conclude that the district court did not err in entering the discovery order in enforcement thereof.

{15}     Even so, however, if we were to conclude that serving Bibiji's attorney of record was improper, Bibiji cannot complain about the resulting discovery order, having invited the remedies provided by this order, as we further explain below. *See Chris L. v. Vanessa O.*, 2013-NMCA-107, ¶ 27, 320 P.3d 16 ("Invited error occurs where a party has contributed, at least in part, to perceived shortcomings in a [district] court's ruling, and, as a result, the party should hardly be heard to complain about those shortcomings on appeal." (alteration, omission, internal quotation marks, and citation omitted)).

{16}     Following service, Bibiji moved to quash the subpoena and vacate the Rule 1-069(A) hearing, and for a protective order. The motion states, "Bibiji construes [the notice of the debtor's examination] and request for documents as a request for production of documents, to which answers and objections are not due until June 19, 2015. Alternatively, Bibiji asks for a protective order rescheduling the hearing date and limiting the documents required to be produced." The motion was based in part on representations regarding Bibiji's medical condition, which her attorney claimed

prohibited her from traveling, and raised detailed objections to the documents requested by the Trustees.

{17}     At the motion hearing, the district court indefinitely quashed the Trustees' subpoena requiring Bibiji's appearance at a Rule 1-069(A) debtor's examination because of her medical condition. The district court also reviewed the document request list attached to the subpoena and the deposition notice, significantly narrowed the document request, and instructed Bibiji that she would have thirty days from the entry of the discovery order to comply. The district court then entered the discovery order, which granted Bibiji's request to quash the subpoena compelling her testimony, found that the Trustees' document requests, taken as a whole, to be overly broad and burdensome in some respects, ordered those requests limited to certain documents described in the order, and provided that "Bibiji shall produce to the Trustees[] [those documents] within thirty days of entry of th[e] [o]rder."

{18}     In sum, Bibiji received the remedies sought by her motion: "[Q]uash the [s]ubpoena and vacate the Rule 1-069 hearing" or "limit[] the scope of documents to be produced." Bibiji's motion to quash, in essence, asked the district court to treat the documents as a Rule 1-034 matter, and the district court followed its lead. Accordingly, even if we were to accept Bibiji's argument that the district court erred in entering the discovery order because of an invalid subpoena, any error was invited.

**{19}** Finally, to the extent Bibiji contends the entry of the discovery order violated her due process rights based on lack of proper service and an opportunity to respond pursuant to Rule 1-034, we disagree. As discussed, service of the subpoena duces tecum was proper under the circumstance of this case. Bibiji's attorney also acknowledged that he received notice of the hearing addressing the Trustees' request for documents and had the opportunity to appear. In advance of the discovery order, Bibiji raised detailed objections by motion to the documents requested, and the district court's discovery order ultimately took Bibiji's objections into account, narrowing the Trustees' document request. Accordingly, entry of the discovery order did not violate Bibiji's due process rights. *See Sandia v. Rivera*, 2002-NMCA-057, ¶ 12, 132 N.M. 201, 46 P.3d 108 ("Generally, due process requires notice and hearing before deprivation." (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

**II. The District Court Did Not Err in Ordering Bibiji to Produce Federal Tax Returns**

**{20}** The discovery order directed Bibiji to disclose, among other documents, certain federal tax returns. Bibiji argues the district court erred in ordering her to produce income tax returns, contending that such returns are absolutely privileged and pointing to Rule 11-502(A) NMRA and state and federal statutes providing for the confidentiality of tax information.

**{21}** The authorities cited by Bibiji, however, do not support the claim that federal tax returns are absolutely privileged. *See Breen v. State Tax'n & Revenue Dep't*,

11

2012-NMCA-101, ¶ 24, 287 P.3d 379 ("Rule 11-502 explicitly makes the privilege dependent on whether the relevant statutes that require the return or report to be made also provide for a privilege to refuse disclosure."); *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1232-33 (7th Cir. 1993) (stating that 26 U.S.C. § 6103, which provides that tax returns and return information shall be confidential, "does not block access, through pretrial discovery or otherwise, to copies of tax returns in the possession of litigants; all it prevents is the IRS's sharing tax returns with other government agencies"). Moreover, although this Court addressed the privilege against disclosure of certain tax information in *Breen*, *Breen* recognized that a taxpayer may waive that privilege. *See* 2012-NMCA-101, ¶ 34.

{22}     Therefore, even if we were to assume for the sake of argument that Bibiji's income tax returns are privileged, Bibiji waived the privilege by placing her tax liability at issue in litigation related to the attorney fees judgment. *See Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077, ¶ 15, 129 N.M. 487, 10 P.3d 166 ("A person who places privileged matters 'at-issue' in the litigation can be said to have implicitly consented to disclosure."). Specifically, Bibiji cited tax liabilities as a reason she did not have sufficient funds to post an appeal bond to secure the attorney fees judgment. In doing so, Bibiji sought to limit her liability for the attorney fees judgment by relying on tax debts, thereby waiving the privilege. *Cf. id.* ¶ 22 (recognizing waiver of the attorney-client privilege where a party "seeks to limit its

liability by describing that advice and by asserting that he [or she] relied on that advice" (internal quotation marks and citation omitted)). Accordingly, the district court did not err in ordering Bibiji to produce certain federal tax returns.

**III.    The District Court's Sanctions Award Did Not Constitute an Abuse of Discretion or Violate Due Process**

{23}    The Discovery Order entered in June 2015 gave Bibiji thirty days to comply. The district court held a status conference in October 2015, and in January 2016 the Trustees moved for sanctions and for an order to show cause. Following briefing and a day-long evidentiary hearing held in October 2019, the district court granted the Trustees' motion for sanctions, ordering Bibiji and her attorney to pay, jointly and severally, (1) the Trustees' fees and costs incurred as a result of Bibiji's failure to comply with the discovery order; and (2) $1,000 per day until Bibiji produced the documents called for by the discovery order and certain additional information, with payment to be made after all rights of appellate review had been exhausted. Bibiji argues the district court erred in awarding sanctions, contending that the award constituted an abuse of discretion and violated the due process rights of her attorney and herself.

**A.    Abuse of Discretion**

{24}    The district court entered the $1,000 per-day sanction pursuant to Rule 1-037 NMRA and the court's inherent power to enforce its orders. Bibiji argues the district

court abused its discretion by (1) failing to properly apply the legal standard under Rule 1-037, (2) exercising its inherent authority, and (3) sanctioning Bibiji and her attorney, jointly and severally, in the *amount* of $1,000 per day until the relevant documents and information were produced.

{25} "We review a [district] court's decision to impose discovery sanctions under Rule 1-037(B)(2) for an abuse of discretion." *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶ 13, 131 N.M. 317, 35 P.3d 972; *see also Weiss v. Thi of N.M. Valle Norte, LLC*, 2013-NMCA-054, ¶¶ 15-16, 301 P.3d 875 (stating that the district court's imposition of discovery sanctions based on its inherent power to control its proceedings is evaluated for an abuse of discretion). Under this standard of review, "we will disturb the [district] court's ruling only when the [district] court's decision is clearly untenable or contrary to logic and reason." *Lewis*, 2001-NMSC-035, ¶ 13 (internal quotation marks and citation omitted); *see also State v. Candelaria*, 2008-NMCA-120, ¶¶ 9, 12, 144 N.M. 797, 192 P.3d 792 (stating that, in reviewing a district court's imposition of sanctions pursuant to its inherent authority, the appellate court is "required to view the evidence, and its inferences, in the light most favorable to the [lower] court's decision").

**1.    Rule 1-037**

{26} Bibiji first argues the district court abused its discretion by failing to properly apply the legal standard under Rule 1-037. Bibiji argues Rule 1-037 sanctions are

only warranted when a party's position in resisting discovery is not "substantially justified," citing Rule 1-037(D). Bibiji contends her conduct was substantially justified because there was no proper service of the subpoena and the documents requested included statutorily privileged income tax returns. We disagree.

{27}    As an initial matter, Rule 1-037(B) rather than 1-037(D) applies here, where a party has failed to comply with a discovery order issued by the district court. *See Sandoval v. Martinez*, 1989-NMCA-042, ¶ 4, 109 N.M. 5, 780 P.2d 1152 (stating that Rule 1-037(B) "deals with sanctions, including dismissal and default, that the court may impose for violation of discovery orders"). Rule 1-037(B)(2) provides that in such cases

> the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney[] fees, caused by the failure, *unless the court finds* that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(Emphases added.)

{28}    Here, the district court made no finding that Bibiji's noncompliance was substantially justified but instead found that "[g]ood cause has not been shown by [Bibiji's attorney] or Bibiji why they should not be sanctioned by the [district c]ourt for their failure to comply with the [discovery] order." *Cf. Pierce v. Underwood*, 487 U.S. 552, 559 (1988) (concluding that a statute which provides that "attorney[] fees shall be awarded unless *the court finds* that the position of the United States was

15

substantially justified," as opposed to simply "unless the position of the United States was substantially justified" emphasizes "the fact that the determination is for the district court to make, and thus suggests some deference to the district court upon appeal" (internal quotations marks omitted and citation omitted)). In finding that Bibiji and her attorney had not shown good cause, the district court's sanctions order stated that neither Bibiji nor her attorney had shown good cause for failing to petition the court to stay or reconsider the discovery order, or post a bond, and noted that Bibiji and her attorney had the ability to comply with the order at all relevant times but had not done so. In addition, the discovery order provides that the responsive documents would be deemed confidential, providing safeguards of this information's privacy. Based on the foregoing, we conclude the district court did not abuse its discretion in declining to find that Bibiji's failure to obey the discovery order was substantially justified. Accordingly, the district court did not fail to properly apply the legal standard under Rule 1-037.

**2.      The District Court's Inherent Authority**

{29}      Bibiji next argues that the district court abused its discretion in exercising its inherent authority. Bibiji contends that her actions were not undertaken in bad faith and were not frivolous filings, but rather "were taken out of concern for protection of statutory privileges from waiver by the production of inherently private

16

information and because of the Trustees' failure to properly serve the subpoena." We are unpersuaded.

**{30}** "We have long held that a court's power is broader than merely the statutory authority to impose sanctions to cover a prejudiced party's costs when the offending party has violated a rule or statute." *Weiss*, 2013-NMCA-054, ¶ 22. Our Supreme Court has thus recognized that "a court's inherent authority extends to all conduct before that court and encompasses orders intended and reasonably designed to regulate the court's docket, promote judicial efficiency, and deter frivolous filings." *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 27, 120 N.M. 1, 896 P.2d 1148. "In that vein, a court must be able to command the obedience of litigants and their attorneys if it is to perform its judicial functions. In these circumstances, a court is permitted to vindicate its judicial authority and impose sanctions." *Weiss*, 2013-NMCA-054, ¶ 22 (internal quotations marks and citations omitted); *accord In re Jade G.*, 2001-NMCA-058, ¶ 28, 130 N.M. 687, 30 P.3d 376 ("Under its inherent authority, a court may sanction parties and attorneys to ensure compliance with the proceedings of the court."); *Sanchez v. Borrego*, 2004-NMCA-033, ¶ 19, 135 N.M. 192, 86 P.3d 617 (stating that sanctions can be imposed to "preserve the integrity of the judicial process and the due process rights of the other litigants" (internal quotation marks and citation omitted)).

17

{31}     Although Bibiji argues she did not act in bad faith, she never sought a stay from the district court in connection with the discovery order. In refusing to comply with the discovery order, Bibiji thus engaged in conduct in direct defiance of the court's authority. *Cf. N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 16, 127 N.M. 654, 986 P.2d 450 (stating that "an award of attorney fees without a basis in a statute, contractual provision, or court rule may be justified as an exercise of a court's inherent powers when litigants, their attorneys, or both have engaged in bad faith conduct before the court *or in direct defiance of the court's authority*" (emphases added) (internal quotation marks and citation omitted)). Accordingly, the district court did not err in exercising its inherent authority to impose sanctions to preserve the integrity of the judicial process.

**3.     Sanction Amount**

{32}     To the extent Bibiji argues the district court abused its discretion by sanctioning her in the *amount* of $1,000 per day until Bibiji produced the relevant documents and information, we cannot say the district court's decision is clearly untenable or contrary to logic and reason in light of the full record. *Cf. Sandoval*, 1989-NMCA-042, ¶ 23 ("We will not reverse a dismissal under Rule 1-037 unless, after reviewing the full record and the reasons the district court gave for its order, we are left with a definite and firm conviction that the court below committed a clear

18

error of judgment in the conclusion it reached upon a weighing of the relevant factors." (internal quotation marks and citation omitted)). We explain.

{33}     The district court's sanctions order stems from the Trustees' attempt to collect on the attorney fees judgment entered in 2012 and awarded in the amount of $718,720.63 in 2014. In 2017 the district court noted that Bibiji's debt under the judgment exceeded $1 million. Bibiji has taken four previous appeals relating to the attorney fees judgment or collection thereof, and Bibiji does not dispute that she has never posted an appeal bond.

{34}     After an evidentiary hearing on the Trustees' sanctions motion at which the district court heard testimony from Bibiji's attorney, the district court issued its sanctions order, which found no evidence that Bibiji was unable to pay the attorney fees judgment. Instead, the court found it was clear from the evidence that Bibiji and her attorney had the ability to comply with the discovery order at all relevant times but had not done so. In addition, the sanctions order stated that neither Bibiji nor her attorney had shown good cause for failing to petition the court to stay or reconsider the discovery order, or post a bond. The district court thus concluded that Bibiji and her attorney had not shown good cause for failing to comply with the discovery order.

{35}     These findings and conclusions are supported by our full-record review and our consideration of the totality of circumstances surrounding Bibiji's failure to

comply with the June 2015 discovery order. *See Medina v. Found. Rsrv. Ins. Co.*, 1994-NMSC-016, ¶ 8, 117 N.M. 163, 870 P.2d 125 (considering the full record and totality of the circumstance surrounding discovery violations in reviewing the district court's finding that the plaintiff willfully failed to comply with his discovery obligations). As discussed, at the October 2015 status conference held several months after the discovery order deadline, the district court reminded Bibiji's attorney that he was under a duty to comply with the order and that his continuing failure to do so would be taken into consideration, noting that he had not requested a stay of the order. In September 2017, more than two years after the discovery order deadline, the district court observed that the facts and procedural history relevant to this matter demonstrated an effort to evade the attorney fees judgment and noted that, "[e]ver since [attorney] fees were originally awarded against Bibiji, through her [attorney], she has claimed herself a pauper, despite the evidence to the contrary shown [at] trial." In light of Bibiji's defiance of the district court's authority, for which the court found no good cause, we cannot say the district court's daily sanction was clearly untenable or contrary to logic and reason. Accordingly, this sanction did not constitute an abuse of discretion.

**B.    Due Process**

{36}    Finally, Bibiji argues the district court's sanction of $1,000 per day violates the due process rights of herself and her attorney, contending that the sanction denies

the opportunity for judicial review and is not the minimum sanction necessary to coerce compliance. Again, we are not persuaded by this argument.

{37} "We review questions of constitutional law and constitutional rights, such as due process protections, de novo." *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 164 P.3d 947; *see also State v. Ngo*, 2001-NMCA-041, ¶ 10, 130 N.M. 515, 27 P.3d 1002 ("Whether [a sanctioned party] was afforded procedural due process is a question of law that we review de novo."). Due process requires that a person subject to a sanction receive, at a minimum, notice of the bases for the threatened sanctions and an opportunity to defend against them. *See In re Byrnes*, 2002-NMCA-102, ¶ 16, 132 N.M. 718, 54 P.3d 996 ("[T]he minimal due process requirements of a prior warning and an opportunity to defend must be strictly maintained."); *see also Papatheofanis v. Allen*, 2009-NMCA-084, ¶ 17, 146 N.M. 840, 215 P.3d 778 ("In cases of indirect civil contempt, due process requires that a party be given notice of the charges."); *Doña Ana Sav. & Loan Ass'n, F.A. v. Mitchell*, 1991-NMCA-054, ¶¶ 13-14, 113 N.M. 576, 829 P.2d 655 (concluding that an attorney sanctioned for violating Rule 1-011 NMRA was afforded due process where the district court gave the attorney notice of the essential facts and an opportunity to be heard).

{38} Here, Bibiji received notice of the bases for the threatened sanction and had an opportunity to defend against them. The Trustees' motion for sanctions and order

21

to show cause explained that the basis for sanctioning Bibiji was her failure to comply with the discovery order and proposed a $1,000 daily sanction until Bibiji complied with the order and filed certain additional documents and information. Bibiji filed a memorandum in opposition to the Trustees' motion for an order to show cause and argued that no sanctions were justified. The district court held an evidentiary hearing on the motion at which it heard testimony from Bibiji's attorney. The district court then granted the Trustees' request as set forth in the original January 2016 motion. Bibiji filed a motion for reconsideration in which she argued against this sanction, which the district court denied.

{39}     Insofar as Bibiji argues that the district court's $1,000 per-day sanction imposes a chilling effect on a litigant's due process right of judicial review of the sanction award, we are likewise unpersuaded. Bibiji cites several federal cases in support of the proposition that government action violates due process when the penalties for disobedience are so enormous that they intimidate a potential challenger from exercising his or her right of access to the courts. The cases Bibiji cites, however, involved fines mandated by statute, which accrue as a matter of law rather than sanctions awarded after—and based on—the district court's consideration of briefing, evidence, and testimony on the issue. Therefore, these cases are not controlling. *See Fernandez v. Farmers Ins. Co.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22. Absent citation to relevant authority and

22

considering that she received notice of the bases for the threatened sanctions and an opportunity to defend against them, Bibiji was not denied the opportunity for judicial review.

{40} Finally, to the extent Bibiji contends the sanction was not the minimum sanction necessary to coerce compliance, this argument is speculative. The district court granted the Trustees' request for a sanction of $1,000 per day—a request the Trustees set forth in their motion for sanctions and order to show cause. Bibiji's memorandum in opposition to the motion argued that no sanctions were justified but did not discuss the Trustees' proposed amount. In her motion to reconsider, Bibiji argued the sanction was too high but proposed no alternative and provided no evidence to support an alternative. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *cf. Marchman v. NCNB Tex. Nat. Bank*, 1995-NMSC-041, ¶ 54, 120 N.M. 74, 898 P.2d 709 (recognizing that Fed. R. Civ. P. 37 "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust" (internal quotation marks and citation omitted)). Given our discussion above, we cannot say that the district court's sanction is more stern than reasonably necessary to preserve the integrity of the judicial process. *See United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 393, 96 N.M. 155, 629 P.2d

231 ("It is only where the sanction invoked is more stern than reasonably necessary that a denial of due process results." (alteration, internal quotation marks, and citation omitted)). Accordingly, the district court's daily sanction did not violate due process.

**CONCLUSION**

{41}     For the foregoing reasons, we affirm.

{42}     **IT IS SO ORDERED.**


_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**


_____
**GERALD E. BACA, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation**